UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC., | Civil Action No. |
| Plaintiffs, | |
| v. | (JURY TRIAL DEMANDED) |
| REGENT BABY PRODUCTS CORP. d/b/a BABY KING, | |
| Defendant. | |

### FIRST AMENDED COMPLAINT

Plaintiffs Luv n' care, Ltd. and Admar International, Inc. (collectively, "Plaintiffs") by their attorneys, hereby complain of Defendant Regent Baby Products Corp. d/b/a Baby King ("Defendant") as follows:

### JURISDICTION AND VENUE

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*; trade dress infringement and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. §1125; and for unfair competition, trade dress dilution and tortious interference with prospective business relations under the law of the State of New York.  This Court has jurisdiction over the federal claims of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338, and 15 U.S.C. § 1121, and has jurisdiction over the state claims under 28 U.S.C. §1338(b) and further

pursuant to its supplemental jurisdiction under 28 U.S.C. §1367. The state claims asserted herein are so related to the federal claims as to form part of the same case or controversy.

2.    This action arises from Defendant's patent infringement, unfair and deceptive business practices, and offer for sale, sale, and distribution of products which are deceptive copies of Plaintiffs' product designs, trademarks and trade dress.

3.    This Court has personal jurisdiction over Defendant in that Defendant is licensed to do business in the State of New York, and has otherwise engaged in acts constituting doing business in this State, including in this judicial district, and has intentionally directed its tortious activities toward New York, including this judicial district. Defendant has delivered its infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this State, including in this judicial district.

4.    Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. §1400(b).

## THE PARTIES

5.    Plaintiff Luv n' care, Ltd. ("Luv n' care") is a corporation organized and existing under the laws of the State of Louisiana having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

6.     Plaintiff Admar International, Inc. ("Admar") is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201. Admar is an affiliate of Luv n' care.

7.     Upon information and belief, Defendant Regent Baby Products Corp. d/b/a Baby King ("Baby King" or "Defendant") is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 180-20 Liberty Avenue, Jamaica, New York 11412. Baby King is a nationwide distributor of baby products.

8.     Royal King Infant Products Co., Ltd ("RK") is a Thailand manufacturer of baby products.

9.     Upon information and belief, Defendant obtains some or all of its accused products from RK.

## FACTS

### LUV N' CARE'S PATENTS

10.     Mr. Nouri E. Hakim is the inventor of novel and nonobvious ornamental designs relating to drinking cups and drinking cup tops for children's sippy cups.

11.     On June 8, 2010, United States Patent No. D617,465 S entitled "Drinking Cup" was duly and lawfully issued to Nouri E. Hakim by the United States Patent and Trademark Office (hereafter "the '465 patent"). A copy of the '465 patent is attached as Exhibit 1 hereto.

3

12.    On March 15, 2011, United States Patent No. D634,439 S entitled "Drinking Cup Top" was duly and lawfully issued to Nouri E. Hakim by the United States Patent and Trademark Office (hereafter "the '439 patent"). A copy of the '439 patent is attached as Exhibit 2 hereto.

13.    Luv n' care is the owner of all right, title and interest in and to the '465 and '439 patents ("the Design Patents").

## DEFENDANT'S INFRINGEMENT OF LUV N' CARE'S PATENTS

14.    During the term of the Design Patents, Defendant has manufactured, offered for sale, sold, used, and/or imported products embodying the patented designs of the Design Patents.

15.    Defendant's infringing products include cups currently being offered for sale and sold under, for example, the "Fisher-Price" brand. Images of examples of infringing products are attached as Exhibit 3 hereto.

16.    Upon information and belief, Defendant has also sold additional products, manufactured by RK, infringing the Design Patents.

17.    Defendant's acts have been without license or authority of Plaintiffs.

## PLAINTIFFS' TRADEMARKS AND TRADE DRESS

18.    Plaintiff Luv n' care is one of the leading baby product companies in the world today. Luv n' care and its brands are well known

throughout the United States and foreign countries as a result of the popular products that it has designed, introduced, and commercialized in interstate and international commerce for use by babies and young children.

19.     Admar is the owner of various United States Trademark Applications and Registrations, under which trademarks Luv n' care sells goods throughout the United States under exclusive rights from Admar.

20.     Plaintiffs have used their trademarks on a wide variety of children's and infants' products sold in interstate commerce, including, but not limited to, children's no-spill drinking cups, baby bottles, infant pacifiers, teethers and so forth.    Plaintiffs have generated hundreds of millions of dollars in revenue from the sale of goods under their trademarks.

21.     Plaintiffs expended significant time, funds, and effort in designing and developing esthetically appealing and attractive product designs for Plaintiffs' goods.

22.     Plaintiffs expended significant time, funds and effort in promoting, advertising, marketing and popularizing Plaintiffs' goods.

23.     As a result of Plaintiffs' design efforts and promotional, advertising and marketing activities, Plaintiffs' products designs, trademarks and/or trade dress have all become widely known throughout the United States and worldwide, and associated with Plaintiffs.

24.     Plaintiffs' products are among the most popular and well known products in their industry, and their line of products is famous throughout the country and the world.

25.     The appearance of Plaintiffs' original design of their no-spill children's drinking cups, including its "Gripper Cup," "Flip-it," "Hard Spout" and "Grip n' sip" cups (collectively, "No-Spill Cups") are distinctive symbols which serve as trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

26.     The design and appearance of Plaintiffs' No-Spill Cups has acquired secondary meaning, and are recognized as identifying Plaintiffs' high-quality products and services.

27.     Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their No-Spill Cups, are all valuable assets of Plaintiffs.

28.     The appearance of Plaintiffs' original design of their "Gripper-Pal" Bottle products ("Gripper-Pal") is a distinctive symbol which serves as a trademark or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

29.     The design and appearance of Plaintiffs' Gripper-Pal has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

30.     Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their Gripper-Pal, are all valuable assets of Plaintiffs.

31.     The appearance of Plaintiffs' original designs of their "Brites Pacifier," "Fruit Pacifier," "Sport Pacifier" and Sculptured Pacifier products, (collectively, "Pacifiers") are distinctive symbols which serve as trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

32.     The design and appearance of Plaintiffs' Pacifiers has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

33.     Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their Pacifiers, are all valuable assets of Plaintiffs.

34.     The appearance of Plaintiffs' original designs of their "Sports Pacifinder" products are distinctive symbols which serve as trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

35.     The design and appearance of Plaintiffs' "Sports Pacifinder" products has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

36.    Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their "Sports Pacifinder" products, are all valuable assets of Plaintiffs.

37.    The appearance of Plaintiffs' original designs of their "Pacifinder & Pacifier" products are distinctive symbols which serve as  trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

38.    The design and appearance of Plaintiffs' "Pacifinder & Pacifier" products has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

39.    Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their "Pacifinder & Pacifier" products, are all valuable assets of Plaintiffs.

40.    The appearance of Plaintiffs' original designs of their Hard and Soft Teething Keys products ("Teething Keys")  are distinctive symbols which serve as trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

41.    The design and appearance of Plaintiffs' Teething Keys has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

42.   Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their Teething Keys, are all valuable assets of Plaintiffs.

43.   The appearance of Plaintiffs' original designs of their Food Storage Bowls with Feeding Spoon products ("Food Containers")   are distinctive symbols which serve as a trademarks or trade dress of Plaintiffs' products in interstate commerce, both in the United States and worldwide.

44.   The design and appearance of Plaintiffs' Food Containers has acquired secondary meaning, and is recognized as identifying Plaintiffs' high-quality products and services.

45.   Plaintiffs' intellectual property including their trademarks, trade dress and their associated goodwill, directed to their Food Containers, are all valuable assets of Plaintiffs.

46.   Baby King has offered for sale, sold and distributed false, unauthorized copies of Plaintiffs' No-Spill Cups, Gripper-Pal, Pacifiers, Pacifinders, Teething Keys, and Food Containers to consumers throughout the United States.

47.   The images of Baby King's unauthorized products shown in the Exhibits to this Complaint are examples of its knock-offs of Plaintiff's products.  These examples are not exhaustive.

48.   Baby King's bad faith activities have caused and will continue to cause a likelihood of deception and confusion in the marketplace among

consumers, and extensive damage to Plaintiffs and their business, goodwill and reputation.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "GRIPPER CUP" PRODUCT DESIGN

49.    Attached as Exhibit 4, is an image of Plaintiffs' "Gripper Cup" product next to an image of Defendant's first generation copy thereof.

50.    The image on the right-hand side of Exhibit 1 depicts Plaintiffs' original no-spill children's drinking cup, known as its "Gripper Cup."

51.    On the left side of Exhibit 4, is an image of a deceptive and confusing first generation knock-off that Defendant has offered for sale and sold, and is upon information and belief, continuing to offer for sale and sell, in interstate commerce.

52.    Attached as Exhibit 5, is an image of Plaintiffs' "Gripper Cup" product next to an image of Defendant's second generation copy thereof.

53.    The image on the right-hand side of Exhibit 5 depicts Plaintiffs' original no-spill children's drinking cup, known as its "Gripper Cup."

54.    On the left side of Exhibit 5, is an image of a deceptive and confusing second generation knock-off that Defendant has offered for sale and sold, and is continuing to offer for sale and sell, in interstate commerce.

55.    Attached as Exhibit 6, is an image of Plaintiffs' "Gripper Cup" cap next to an image of Defendant's copy thereof.

56.     The image on the right-hand side of Exhibit 6 depicts Plaintiffs' "Gripper Cup" cap.

57.     On the left side of Exhibit 6, is an image of a deceptive and confusing knock-off that Defendant has offered for sale and sold, and is continuing to offer for sale and sell, in interstate commerce.

58.     The overall appearance of Plaintiffs' "Gripper Cup" product is protectable, distinctive, non-functional trade dress.  Plaintiffs' trade dress includes the combination and arrangement of the following elements of its cap and cup, when the cap and cup are considered individually, as well as the combination and arrangement of the following elements of the cap and cup when the cap and cup are attached together.

59.     With respect to the "Gripper Cup" cap, Plaintiffs' trade dress includes the following elements: an oval-shaped, clear, silicone spout, resting on a circular, clear, silicone, disc-like insert that is convex, raised above and resting on the cap, providing a ridged or rounded layered-like appearance, the cap being a custom-colored, bell-shaped cap with relief impressions along the sides.

60.     With respect to Plaintiffs' trade dress in their cup, the cup is a clear or custom-colored translucent cup having an hour-glass shape in front and back; the top portion of the cup possesses a hood-like design that starts at the top and extends in a fluid, curved form downward, ending near the bottom of the cup; the middle portion of the cup has a series of inset wave and

ripple-like grooves that extend in a concave fashion toward the interior of the cup; the bottom and top of the cup have a bulbous-like shape, with the top being more round than the bottom of the cup.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "FLIP-IT" PRODUCT DESIGN

61.     Attached as Exhibit 7, is an image of Plaintiffs' "Flip-it" product.

62.     Attached as Exhibit 8, is an image of a deceptive and confusing knock-off that Defendant has offered for sale and sold, and is continuing to offer for sale and sell in interstate commerce.

63.     The overall appearance of Plaintiffs' "Flip-it" cup is protectable, distinctive, non-functional trade dress.  Plaintiffs' trade dress includes the combination and arrangement of the following elements of their cap, when the cap is considered individually, as well as the combination and arrangement of the following elements when the cap and cup are attached together.

64.     With respect to the "Flip-it" product, Plaintiffs' trade dress includes the combination and arrangement of a flip-top "football helmet" shaped cap, and a ring shaped base, when the cap is considered individually, and when attached to a cup.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "HARD SPOUT" PRODUCT DESIGN

65.     Attached as Exhibit 9, is an image of Plaintiffs' "Hard Spout" product.

66.     Attached as Exhibit 10, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and is upon information and belief, continuing to offer for sale and sell, in interstate commerce.

67.     The overall appearance of Plaintiffs' "Hard Spout" cup is protectable, distinctive, non-functional trade dress.  Plaintiffs' trade dress includes the combination and arrangement of the following elements of their cap, when the cap is considered individually, as well as the combination and arrangement of the following elements of the cap and cup when the cap and cup are attached together.

68.     With respect to Plaintiffs' trade dress in their cup, the cup is a custom-colored translucent, generally cylindrical shaped cup having a slightly wider upper portion.

69.     With respect to Plaintiffs' trade dress in their cap, the colored or tinted inner dome cap portion sits on an outer ring cap portion; the outer ring cap portion sits on the body of the cup; the inner dome cap portion having a spout with a bulb-like base and a relatively pointed top.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "GRIP N' SIP" PRODUCT DESIGN

70.     Attached as Exhibit 11, is an image of Plaintiffs' "Grip n' sip" product.

71.     Attached as Exhibit 12, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and is continuing to offer for sale and sell, in interstate commerce.

72.     The overall appearance of Plaintiffs' "Grip n' sip" cup is protectable, distinctive, non-functional trade dress.  Plaintiffs' trade dress includes the combination and arrangement of the following elements of their cap and cup, when the cap and cup are considered individually, as well as the combination and arrangement of the following elements of the cap and cup when the cap and cup are attached together.

73.     With respect to the no-spill drinking product's cap, Plaintiffs' trade dress includes the following elements: an oval-shaped, clear, silicone spout, resting on a circular, clear, silicone, disc-like insert that is convex, raised above and resting on the cap, providing a ridged or rounded layered-like appearance, the cap being a custom-colored, bell-shaped cap with relief impressions along the sides.

74.     With respect to Plaintiffs' trade dress in their cup, the cup is a custom-colored translucent, or transparent cup, having two handles upwardly extending from the base area of the cup, and curving away from and then

14

back toward the cup, with each handle hanging free at the top, and with a colored contrasting overlay on each of the handles.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFFS' "BRITES PACIFIER" PRODUCT DESIGN

75.     Attached as Exhibit 13, is an image of Plaintiffs' "Brites Pacifiers" product.

76.     Attached as Exhibit 14, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and is continuing to offer for sale and sell, in interstate commerce.

77.     The overall appearance of Plaintiffs' "Brites Pacifier" product is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes a combination of a colored contoured plastic shield with upper and lower rounded indentations thereon, a cap shaped handle, and an arcuate pattern of holes on each side of the nipple, the arcuate pattern on each side including a single large center hole and smaller lateral holes.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFFS' "SPORT PACIFIER" PRODUCT DESIGN

78.     Attached as Exhibit 15, are images of Plaintiffs' "Sport Pacifier" product.

79.     Attached as Exhibit 16, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon

information and belief, is continuing to offer for sale and sell, in interstate commerce.

80.    The overall appearance of Plaintiffs' "Sport Pacifier" is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a colored, contoured plastic shield; at least one three-dimensional representation of an article of sports equipment as, for example, a basketball, baseball, soccer ball, football, and/or the like; a ring-shaped handle; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "FRUIT PACIFIER" PRODUCT DESIGN

81.    Attached as Exhibit 17, are images of Plaintiffs' "Fruit Pacifier" product.

82.    Attached as Exhibit 18, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

83.    The overall appearance of Plaintiffs' "Fruit Pacifier" is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a colored, contoured plastic shield; at least one three-dimensional representation of a piece of fruit as, for example, an apple, an orange, a cluster of grapes, and/or the like; a ring-

shaped handle; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' SCULPTURED PACIFIER PRODUCT DESIGN

84.   Attached as Exhibit 19, are images of Plaintiffs' Sculptured Pacifier product.

85.   Attached as Exhibit 20, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

86.   The overall appearance of Plaintiffs' Sculptured Pacifier is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a colored, contoured plastic shield; a substantially ring-shaped handle having raised illustrations thereon which are appropriate for children as, for example, animals, stars, balloons, water, clouds, rain, the sun, and/or the like, some of which extend beyond the border of the handle; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "SPORTS PACIFINDER" PRODUCT DESIGN

87.   Attached as Exhibit 21, are images of Plaintiffs' "Sports Pacifinder" products.

88.     Attached as Exhibit 22, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

89.     The overall appearance of Plaintiffs' "Sports Pacifinder" is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a disc having the shape and appearance of an article of sports equipment as, for example, a basketball, baseball, soccer ball, football, and/or the like, the back of which is secured to a clip; a substantially rectangular loop extending from the disc and having a color matching the dominant color of the article of sports equipment; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFFS' "PACIFINDER & PACIFIER" PRODUCT DESIGN

90.     Attached as Exhibit 23, is an image of Plaintiffs' "Pacifinder & Pacifier" product.

91.     Attached as Exhibit 24, is an image of a deceptive and confusing knock-off that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

92.     The overall appearance of Plaintiffs' "Pacifinder & Pacifier" product is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a substantially oval

disc having one or more illustrations on its front face, the back face being secured to a clip, the aforesaid disc being considered on its own or in combination and/or arrangement with a pacifier having a contoured plastic shield and ring-shaped handle.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' "GRIPPER-PAL" PRODUCT DESIGN

93.     Attached as Exhibit 25, is an image of Plaintiffs' "Gripper-Pal" product.

94.     Attached as Exhibit 26, are images of the deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

95.     The overall appearance of Plaintiffs' "Gripper-Pal" is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements: a baby bottle having the container-portion (which is below the cap and nipple) shaped and colored to resemble an animal as, for example, a bear and the like; the animal having a head, face, arms, body, and feet; the animal appearing in the standing position when the bottle is upright; wherein the belly portion of the animal is substantially removed to form a handle with which to grasp the bottle; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' TEETHING KEYS PRODUCT DESIGN

96.     Attached as Exhibit 27, is an image of Plaintiffs' Teething Keys product.

97.     Attached as Exhibit 28, is an image of a deceptive and confusing knock-off that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

98.     The overall appearance of Plaintiffs' Teething Keys is protectable, distinctive, non-functional trade dress. Specifically, Plaintiffs' trade dress includes the following elements: a large key ring having multiple large and disproportionately wide keys hanging therefrom; wherein each key has a colored bow portion (the part of a key that protrudes from the lock when a key has been inserted in a lock) and a colored blade portion (the part of a key that is inserted in a lock); wherein the blade portion has teeth-like indentations along at least one edge, and further has a color different from the color of the bow on the same key and different from the colors of the blades on the other keys on the key ring; wherein the bow portion of each key has a raised rim around its perimeter and further contains a hole through which the key ring is threaded; and the combination and arrangement of the aforesaid elements.

## DEFENDANT'S INFRINGEMENT OF
## PLAINTIFFS' FOOD CONTAINERS PRODUCT DESIGN

99.    Attached as Exhibit 29, is an image of Plaintiffs' Food Containers product.

100.    Attached as Exhibit 30, are images of deceptive and confusing knock-offs that Defendant has offered for sale and sold, and, upon information and belief, is continuing to offer for sale and sell, in interstate commerce.

101.    The overall appearance of Plaintiffs' Food Containers is protectable, distinctive, non-functional trade dress.  Specifically, Plaintiffs' trade dress includes the following elements:  a colored container having multiple, round tiers, the tiers becoming wider as they approach the top of the container; a colored, round lid having a color different from that of the container and having a semi-circular tab protruding from its edge, the aforesaid elements being considered individually, together, or in combination and/or arrangement with a feeding spoon having one or more colors that match that of the lid and/or bowl.

## FALSE DESIGNATION, CONFUSION, AND DILUTION BY
## BLURRING AND TARNISHMENT

102.    Defendant is profiting from sales of these unauthorized knock-offs.

103.    The trade and consuming public are likely to be misled into believing that the unauthorized knock-offs of Plaintiffs' No-Spill Cups,

Gripper-Pal, Pacifiers, Pacifinders, Teething Keys and Food Containers (hereafter, collectively, "The Products") originate with or are otherwise authorized, sponsored and/or licensed by, or associated with the Plaintiffs.

104.    Defendant is using The Products' designs to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace.

105.    Defendant is also blurring and tarnishing the distinctive quality of Plaintiffs' famous and extremely strong and distinctive product designs, trade dress and trademarks associated with The Products.

106.    As shown in the Exhibits, Defendant's products have repeatedly been designed to resemble those of Plaintiffs, to cause confusion, mistake, and deception in the marketplace.

107.    Both the copying of Plaintiffs' individual products, and the copying of the overall appearance of a segment of Plaintiffs' line of products, has been calculated to illegally trade off of Plaintiffs' reputation and good will.

108.    Defendant's activities mislead the trade and purchasing public into believing that goods marketed and sold by Defendant originate with or are otherwise authorized by, sponsored by, licensed by, or associated with Plaintiffs.

109.    Upon information and belief, Defendant in connection with goods and containers for goods, has used in commerce words, terms, names,

symbols or devices, or combinations thereof, false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which: are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendant with the Plaintiffs and as to the origin, sponsorship, and approval of Defendant's goods, services and commercial activities.

110.   Upon information and belief, Defendant, in commercial advertising and promotion, has misrepresented the nature, characteristics, qualities and geographic origin of its goods and commercial activities.

111.   Plaintiffs' marks, including, their product designs, and packaging and the marks thereon, are widely recognized by consumers of children and infant care products and by the general consuming public of the United States as a designation of source of Plaintiffs' goods.

112.   Plaintiffs' trademarks and trade dress concerning The Products are not functional.

113.   Defendant's activities are causing and are likely to cause dilution of Plaintiffs' trade dress and trademarks, including by blurring and by tarnishment.

114.   Defendant's activities have been deliberate and willful.

115.   Defendant is aware of the Design Patents, and is aware of Plaintiffs' original designs to The Products, and has deliberately chosen to

reproduce, copy, offer for sale and sell its unauthorized and infringing products, and to confuse the public as to the source, origin, sponsorship and/or approval of the infringing products.

116. Upon information and belief, Defendant is also aware of Plaintiffs' suits against RK, the Thailand manufacturer, which suits are related to several products which are the subject of this lawsuit.

117. Upon information and belief, Defendant is also aware of the settlement agreement between Plaintiffs and RK in Civil Action No. 2:08-cv-163 in the Eastern District of Texas.

118. Upon information and belief, Defendant is also aware that RK agreed to cease and desist from manufacture and sales of products likely to cause confusion with several of Plaintiffs' products which are the subject of this lawsuit.

119. Defendant has deliberately chosen to sell products in the United States (and upon information and belief in and/or to customers in foreign countries) that infringe Plaintiffs' rights and that contribute to RK's infringement of its settlement agreement, despite its knowledge of Plaintiffs' suits against RK, and its rights under the RK settlement agreement.

120. Defendant's actions have caused and are causing irreparable damage to Plaintiffs, their business and their reputation.

121.   Plaintiffs have been extensively damaged by Defendant's bad faith activities and will continue to be damaged unless Defendant is restrained and enjoined by this Court.

122.   Plaintiffs have no adequate remedy at law.

123.   Plaintiffs have been extensively damaged by Defendant's illegal actions in an amount to be determined by a jury and this Court, including recovery and relief for Plaintiffs' lost sales, lost profits, and damage to their reputation and good will, as well as a disgorgement of Defendant's revenues and profits.

## COUNT I
## PATENT INFRINGEMENT
### (35 U.S.C. §101 *et seq.*)

124.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

125.   This claim arises under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*

126.   This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

127.   Defendant's unlawful acts constitute infringement of the Design Patents under 35 U.S.C. §271.

128.   Defendant has profited from its infringing activities.

129.   As a result of Defendant's conduct, Plaintiffs have been substantially harmed, have suffered actual damages, have suffered lost profits, and have been forced to retain legal counsel and pay costs of court to bring this action.

**COUNT II**
**LANHAM ACT TRADE DRESS INFRINGEMENT**
**AND UNFAIR COMPETITION:**
**(15 U.S.C. § 1125(a))**

130.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

131.   This claim arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

132.   This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

133.   On the basis of the foregoing paragraphs, Defendant is intentionally using product trademarks and trade dress confusingly similar to Plaintiffs' trademarks and trade dress directed to The Products in a manner that has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiffs.

134.   Defendant's activities, in selling and offering for sale products which are confusingly similar to The Products, constitute unfair competition,

false designation of origin, and false description and representations, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

135.   Defendant has profited from its illegal and bad faith activities.

136.   Plaintiffs have suffered, and continue to suffer, substantial damages as a result of Defendant's bad faith activities, in an amount to be determined by the jury and this Court.

### COUNT III
### FEDERAL TRADEMARK DILUTION

137.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

138.   Plaintiffs' trademarks and trade dress associated with The Products are famous.

139.   These marks and trade dress qualify as famous trademarks under the meaning of the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

140.   Defendant's actions in using Plaintiffs' famous marks in commerce have caused, and continue to cause, actual dilution of the distinctive quality of Plaintiffs' marks, including blurring and tarnishment of Plaintiffs' marks.

141.   Defendant has willfully intended to trade on Plaintiffs' reputation and to cause dilution of Plaintiffs' marks.

142.   By reason of the foregoing, Plaintiffs have been injured in an amount to be determined by the jury and this Court, and are entitled to the remedies provided for in the Lanham Act, 15 U.S.C. § 1114, *et seq.*

## COUNT IV
## UNFAIR COMPETITION UNDER NEW YORK LAW

143.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

144.   This claim arises under the common law of the State of New York.

145.   This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

146.   Plaintiffs have created and promoted The Products, including their trademarks, packaging and trade dress, through extensive time, labor, skill and money.

147.   Defendant has misappropriated the results of that labor and skill and those expenditures of Plaintiffs.

148.   Defendant has used trademarks and trade dress that are identical to or confusingly similar to Plaintiffs', for identical or highly similar goods, in competition with Plaintiffs, gaining an unfair advantage, because Defendant bore little or no burden of expense of development and promotion of the trade dress and packaging.

149.   By knowingly using confusingly similar product trade dress for identical or highly similar goods, to compete against Plaintiffs' goods, Defendant has misappropriated a commercial advantage belonging to Plaintiffs.

150.   Defendant has also engaged in bad faith misappropriation of the labors of Plaintiffs which is likely to cause confusion, and to deceive purchasers as to the origin of the goods, and which dilutes the value of Plaintiffs' trademarks and trade dress directed to The Products.

151.   Defendant's actions have caused significant commercial damage to Plaintiffs.

152.   Defendant's conduct is illegal and actionable under the common law of unfair competition of the State of New York.

153.   Plaintiffs have been injured by Defendant's illegal actions and are entitled to the remedies provided under New York law.

## COUNT V
## VIOLATION OF NEW YORK
## GENERAL BUSINESS LAW SECTION 360-l

154.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

155.   Defendant's misappropriation and infringement create a likelihood of injury to Plaintiffs' business reputation and dilution of the

distinctive quality of The Products in violation of Section 360-l of the New York General Business Law.

156. Defendant's activities have also caused actual injury to Plaintiffs' business reputation and actual dilution of the distinctive quality of The Products.

157. By reason of the foregoing, Plaintiffs have been injured by Defendant's illegal actions and are entitled to the remedies provided for in the New York General Business Law.

## COUNT VI
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONS

158. Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

159. This claim arises under the common law of the State of New York.

160. Plaintiffs have sold their No-Spill Cups throughout the world to third party customers. Plaintiffs have business relationships with such third parties. One such customer is Dollar General Corporation.

161. Defendant has engaged in unauthorized copying of Plaintiffs' No-Spill Cups, and, upon information and belief, has acted to induce customers including, but not limited to, Dollar General Corporation, to

purchase the illegal no-spill cups of Defendant instead of the authorized, legitimate, No-Spill Cups of Plaintiffs.

162.   Upon information and belief, Defendant has acted with the sole purpose of harming Plaintiffs or used dishonest, unfair or improper means to cause harm and injury to Plaintiffs.

163.   Defendant lacked lawful privilege or justification to engage in its wrongful acts.

164.   Defendant's actions constitute tortious interference with Plaintiffs' prospective business and contractual relations.

165.   Plaintiffs have suffered actual and significant damage and loss due to Defendant's illegal actions.

## COUNT VII
## CONTRIBUTORY INFRINGEMENT

166.   Plaintiffs repeat and re-allege the allegations contained in each of the preceding paragraphs of this Complaint, as though fully set forth herein.

167.   This claim arises under the Lanham Act, and under the laws of the State of New York.

168.   Upon information and belief, Defendant is aware of Plaintiffs' suits against RK, the Thailand manufacturer, which suits are related to several products which are the subject of this lawsuit.

169.   Upon information and belief, Defendant is also aware of the settlement agreement by RK in Plaintiffs' suit in the Eastern District of Texas against RK (Civil Action Number 2:08-cv-163) and RK's obligation under that agreement to cease and desist from manufacture and sales of products likely to cause confusion with several of Plaintiffs' products which are the subject of this lawsuit.

170.   Defendant has deliberately and knowingly chosen to sell products infringing Plaintiffs' rights under the settlement agreement, thereby contributing to RK"s infringement of its settlement agreement, and constituting unfair competition, despite its knowledge of Plaintiffs' rights under the RK settlement agreement.

171.   Defendant's activities, in selling and offering for sale products which are confusingly similar to Plaintiffs' products and barred under Plaintiffs' settlement agreement with RK, constitute contributory infringement of Plaintiffs' rights as set forth under its settlement agreement, and constitute unfair competition, in violation of the Lanham Act and New York law.

172.   Plaintiffs have suffered injury and damage due to Defendant's illegal actions.

## JURY TRIAL DEMAND

173.   Pursuant to Rule 38, Fed. R. Civ. P., Plaintiffs hereby demand a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Luv n' care and Admar respectfully request that the Court, upon final hearing of this matter, grant the following relief against Defendant:

A.   That Defendant be adjudged to have engaged in patent infringement of Plaintiffs' rights under its Design Patents, under 35 U.S.C. §101 *et seq.*;

B.   That Defendant be adjudged to have engaged in federal unfair competition, trade dress infringement and dilution under Section 43 of the Lanham Act, 15 U.S.C. §1125 and unfair competition and trade dress dilution under the common law and statutory law of the State of New York, and contributory infringement and unfair competition under the Lanham Act and New York law;

C.   That the Design Patents were duly and legally issued by the United States Patent and Trademark Office, and is valid and enforceable.

D.   That each of Defendant, its officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with Defendant be enjoined pursuant to 35 U.S.C. §283 from engaging in any activities which infringe Plaintiffs' rights in the Design Patents under 35 U.S.C. §271;

E.     That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be enjoined pursuant to 35 U.S.C. §283 from making, using, importing, exporting, offering for sale and selling any products which directly infringe or contributorily infringe or actively induce infringement of the Design Patents under 35 U.S.C. §271;

F.     That each of Defendant, its officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in any activities, including but not limited to making, using, importing, offering for sale and selling any products or packaging, which directly or contributorily infringe or actively induce infringement of Plaintiffs' rights in their products or advertising materials, including Plaintiffs' rights in their trademarks and trade dress and Plaintiffs' rights pursuant to its settlement agreement with RK;

G.     That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public

into believing that Defendant's merchandise in any way originates with, is sanctioned by, or is affiliated with Plaintiffs;

H.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from otherwise competing unfairly with Plaintiffs;

I.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in further acts of misrepresentation regarding Plaintiffs and Plaintiffs' products;

J.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in further deceptive and unfair business practices with respect to Plaintiffs;

K.    That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in further acts of tortious interference with Plaintiffs' existing and prospective contractual and business relations;

L.  That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in further acts infringing Plaintiffs' rights under New York law;

M.  That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the injunction;

N.  That Defendant be required to account for and pay over to Plaintiffs all damages sustained by Plaintiffs, as well as any and all of Defendant's gains, revenues, profits and advantages attributable to or derived from the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117, as well as 35 U.S.C. §§284 and 289, and all further applicable law;

O.  That each such award of damages be enhanced to the maximum available for each infringement in view of Defendant's willful infringement of Plaintiffs' rights;

P.  That Defendant be required to deliver up for impoundment

during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials, including molds and master models, used for making same;

Q.   That Plaintiffs be awarded punitive damages because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

R.   That Plaintiffs recover the costs of this action including their expenses and reasonable attorney's fees pursuant to 15 U.S.C. §1117, 35 U.S.C. §285  and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, which make this an exceptional case warranting such award;

S.   That Plaintiffs be awarded pre-judgment and post-judgment interest;

T.   That Plaintiffs obtain all further relief permitted under the laws of the United States and the State of New York; and,

U.   That Plaintiffs obtain all such other and further relief as the Court may deem just and equitable.

Dated: May 9, 2011

Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 4th Floor
New York, New York 10019
(646) 380-2087 (phone)
(646) 514-2123 (fax)
MCohen@goldbergcohen.com
LGoldberg@goldbergcohen.com

Of Counsel:
Joe D. Guerriero
Luv n' care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana 71201
318-338-3603 (phone)
318-388-5892 (fax)
joed@luvncare.com

Attorneys for Plaintiffs Luv n' care,
Ltd. and Admar International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **FIRST AMENDED COMPLAINT** was made on this 9th day May, 2011, by delivering a true and correct copy of the same by Federal Express Priority Overnight to the following:

John Johnson
Fish & Richardson PC
601 Lexington Aveune
New York, NY 10152

Sherika Sterling