UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUV N' CARE, LTD. and
ADMAR INTERNATIONAL, INC.,

                  Plaintiffs,

v.

REGENT BABY PRODUCTS CORP. d/b/a
BABY KING,

                  Defendants.

C.A. No.  10 Civ. 9492 (LLS)

## PLAINTIFFS' TRIAL BRIEF

Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
Sasha B. Coffiner (SC-4362)
Benjamin Graf (BG-1409)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 4th Floor
New York, New York 10019
(646) 380-2087 (phone)
(646) 514-2123 (fax)
MCohen@goldbergcohen.com
LGoldberg@goldbergcohen.com
SCoffiner@goldbergcohen.com
BGraf@goldbergcohen.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

APPLICABLE LAW ..............................................................................................1
    I.   Functionality in the Design Patent Context ...........................................1
       A. Definition of Functionality.................................................................1

    II.  Claim Construction of Design Patents....................................................4
       A. Broken Lines Are Not Included in the Scope of the Claims.............4

    III. Design Patent Validity ............................................................................5

PROCEDURAL ISSUES........................................................................................5
    I.   Plaintiffs Should Proceed First On the Order of Proof As Is Traditional ................5

EVIDENTIARY ISSUES .......................................................................................8
    I.   Defendant Regent Should Not Be Allowed to Confuse the Jury by Improperly Importing Limitations from Plaintiffs' Commercial Embodiment into the Design Patent Claims.................................................................................................8

    II.  Defendant Regent Should Be Precluded from Importing Unclaimed Limitations from Other Utility Patents Into the Design Patent Claims .............................................10

    III.  Defendant Regent Should Be Precluded from Confusing the Jury With the Improper Standard for Design Patent Functionality ......................................................11

    IV.  Defendant Regent Should Be Precluded from Introducing Evidence Regarding the '620 Patent...............................................................................................12

    V.  Defendant Regent Should Be Precluded from Introducing Evidence Regarding the Validity of Other Third Party Patents ..........................................................14

    VI.  Regent Should Not be Allowed to Introduce Prejudicial Information Regarding Unrelated Product Recalls, FDA Warnings, and a Seventeen Year Old Misdemeanor Guilty Plea...............................................................................................14

CONCLUSION.....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 836 (Tex. Ct. App. 1988)…… ...............16

*Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339 (1961)………… ........... 4

*Best Lock Corp. v. ILCO Ubican Corp.,* 94 F.3d 1563 1566 (Fed. Cir. 1996)………...............3

*Berry Sterling Corp v. Prescor  Plastics, Inc.,* 122 F.3d 1452, 1455 (Fed Cir. 1997)… ..............9

*Bizzle v. McKesson Corp.,* 961 F.2d 719, 721 (8th Cir. 1992)………………..…… ............15

*Blue Cross and Blue Shield of New Jersey,* 141 F.Supp.2d 320, 323…………..…...............12, 13

*Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed. Appx. 615, 620 (2d Cir. 2008)………….............3

*Contessa Food Prods., Inc. v. Conagra,* 282 F.3d 1370, 1378 (Fed. Cir. 2002)………..............5

*Cont'l Paper Bag Co. v. E. Paper Bag Co.,* 210 U.S. 405, 419 (1908)…………..……...............4

*Dexas Int'l, Ltd. v. Tung Yung Int'l, Inc.,* Civil Action No. 6:07-cv-334, 2008 U.S. Dist. LEXIS 48324, at *9 (E.D. Tex. Jun. 24, 2008)……………………………………...............5

*Egyptian Goddess v. Swisa,* 543 F.3d 665, 678, 678-79 (Fed. Cir. 2008)……………..........4,6, 7

*Etna Prods. Co., Inc. v. Q Mktg. Grp., Ltd.,* 2004 U.S. Dist. LEXIS 15323, 21 (S.D.N.Y. 2004)………………………………………………………………………………...3

*Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 49 (Okla. 1976)……………………...............15

*Harpring v. Continental Oil Co.,* 628 F.2d 406, 410 (5th Cir. 1980)…………………...............16

*Harris v. General Motors Corp.,* 2007 WL 622226 (N.J. Superior Court, Appellate Division, March 2, 2007)………………………………………………………....................15

*Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars Inc.,* 915 F.2d 641, 649 (11th Cir. 1990)………………………………………………………….. .................…15

*Hupp v. Siroflex of Am., Inc.,* 122 F.3d 1456, 1460 (Fed. Cir. 1997…………………… ..............2

*In re Zahn,* 617 F.2d 261, 268-69 (C.C.P. A. 1980)……………………………...............4

*Jordan v. General Motors Corp.,* 624 F.Supp. 72, 77 (E.D. La 1985)………………..............15

*Kane v. Ford Motor Co.,* 450 F.2d 315, 316 (3d Cir. 1971)…………………………...............15

*King Pharmaceuticals, Inc. v. Sandoz, Inc.,* Civil Action No. 09-3587, 2010 U.S. Dist. LEXIS 105061, at *9 (D.N.J. Oct. 1, 2010)…………………………………...............10

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123, (Fed. Cir. 1993)..2, 3, 5, 8

*Lewy v. Remington Arms Co., Inc.,* 836 F.2d 1104, 1109 (8th Cir. 1988)……………..............15

*Level One Communs. v. Seeq Tech.,* 987 F. Supp. 1191, 1196 (N.D. Cal. 1997)............................ ..6

*Matsushita Ele. Indus. Co.,* 505 F.Supp. 11125, 1185, *rev'd on other grounds,* (E.D. Pa. 1980)……………………………………………………………………… ............12

*Merrill v. Yeomans,* 94 U.S. 568, 570 (1876)……………………………………… ..............4

*Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005)………………………………………………………………… .............…10

*Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir. 1992)…………………………………...............…12

*Novartis Pharmaceuticals Corp. v. Apotex Corp.,* 02 Civ. 8917, at *14-15 (KMW) (HBP) (S.D.N.Y. Mar. 13, 2006)……………………………………………… ….......…10

*Olin Corp. v. Certain Underwriters at Lloyd's London,* 468 F.2d 120 (2d Cir. 2006)………….…17

*Orthoarm, Inc. v. Forestadent USA, Inc.,* 682 F. Supp 2d 978, 981 (E.D. Mo. 2008)… ............8, 9

*Paradigm Sales, Inc. v. Weber Marking Sys., Inc.* 880 F. Supp. 1247, 1252 (N.D. Ind. 1995)…………………………………………………………………… ...........…8, 9

*Parker-Hannifin Corp. v. Wix Filtration Corp.,* Case No. 1:07-cv-1374, Case No. 1:07-cv-1375, 2011 U.S. Dist. LEXIS 33578, at *37 (N.D. Ohio March 17, 2011)………...................……9

*Phillips v. A.H Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005)……………… ............………4, 10

*Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, (1933)…………….............……..…13

*Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1294 (Fed. Cir. 2010)……...............……...3, 11

*Robinson v. Clemons,* 1998 WL 151285 (D. Del. 1998)……………………………...............……17

*Sofpool, LLC v. Intex Recreation Corp.,* Case No. 2:07-cv-097, 2007 U.S. Dist. LEXIS 93057, at *6 (E.D. Tex. Dec. 19, 2007)…………………………………………… .............................………5

*Sun Hill Indus., Inc. v. Easter Unlimited, Inc.,* 48 F.3d 1193, 1196 (Fed. Cir. 1995)… ...............8

*United States v. Fernandez,* 480 F.2d 726 (1973)…………………………………...............……13

*United States Football League v. Nat'l Football League,* 842 F.2d 1335, 1375 (2d Cir. 1988)……………………………………………………………………… ...............…13

*Uitts v. General Motors Corp.,* 411 F.Supp. 1380, 1383 (E.D. Pa 1974)………… ............……15

*Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F.Supp.2d 881, 888-89 (W.D. La 2001)……………………………………………………………………… ...........………15

## **Statutes and Rules**

35 U.S.C. §171.........................................................................................................2

15 U.S.C. § 1125(a)(3)……………………………………………………………….7

Manual of Patent Examining Procedure ("MPEP") §1504.01(c)...................................2

Manual of Patent Examining Procedure ("MPEP") §1503.02 ........................................................5

Federal Rule of Evidence 401 .............................................................................................................14

Federal Rule of Evidence 402 .............................................................................................................14

Federal Rule of Evidence 403 .............................................................................................................14

Federal Rule of Evidence 404 .............................................................................................................14

Federal Rule of Evidence 609 .............................................................................................................14

Federal Rule of Evidence 802 .............................................................................................................14

Federal Rule of Evidence 803 .............................................................................................................14

**INTRODUCTION**

Plaintiffs Luv n' care, Ltd. and Admar International, Inc. (collectively "Plaintiffs" or "LNC") respectfully submit this Trial Brief addressing the contested issues of law in this case, as well as evidentiary issues likely to arise at trial, in accordance with the Court's Individual Practices.

In summary, it is Plaintiffs' position that the designs claimed in U.S. Patent Nos. D617,465 ("the '465 patent") and D634,439 ("the '439 patent"), and their elements, are ornamental, i.e. non-functional.

In addition, Regent should be precluded from introducing irrelevant evidence regarding unrelated and unclaimed products, patents, lawsuits, and features, that are designed to create prejudice and to create jury confusion.

**APPLICABLE LAW**

The present mini-trial is limited to the issue of the functionality of the claims of the '465 and '439 patents and their elements.  The applicable law is as follows.

**I.    "FUNCTIONALITY" IN THE DESIGN PATENT CONTEXT**

The following are the legal standards in analyzing whether the overall claimed designs in LNC's D439 and D465 design patents, and their individual elements, are functional or non-functional.

**A.    Definition of Functionality**

"A design patent is directed to the appearance of an article of manufacture."  *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123, (Fed. Cir. 1993).  For a design patent to be issued by the Patent Office, the appearance must be "ornamental".  35 U.S.C. §171.  If the Patent Office considers a design to be functional – which is the opposite of ornamental – then the PTO

will not issue the patent.  *See*, U.S. Patent Office Manual of Patent Examining Procedure ("MPEP") §1504.01(c).

It is very important to distinguish the legal meaning of the word "functional" from the very different plain English meaning of the word "functional".  As the U.S. Court of Appeals for the Federal Circuit has explained, "***the fact that an article of manufacture serves a function is a*** <u>***prerequisite***</u> ***of design patentability,*** <u>***not a defeat thereof***</u>.  The function of the article itself must not be confused with "functionality" ***of the design*** of the article."  *Hupp v. Siroflex of Am., Inc*., 122 F.3d 1456, 1460 (Fed. Cir. 1997) (emphasis added).

In other words, the fact that something has a function does ***not*** make it legally "functional".  The same holds true both for an element of a design, and for an overall design.

By law, an individual design element is only functional if its appearance is "driven ***<u>purely</u>*** by utility".  *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1294 (Fed. Cir. 2010) (emphasis added).  Similarly, an overall design of a product only has "functionality" when the design is ***dictated by its function***.  *See e.g., L.A. Gear, Inc. v. Thom Mcan Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (the appearance of an overall patented design is functional only when it is "<u>dictated</u> by the use or purpose of the article").[1]  Likewise, in the trade dress context a design is functional only if it is "<u>essential</u> to the use or purpose of the article".  *Cartier,* 294 Fed. Appx. at 620.

---

[1]  A "particular feature of a patented design is ornamental [and not functional] if 'the  functional aspect or purpose [of the feature] could be accomplished in many other ways.'" *Etna Prods. Co., Inc. v. Q Mktg. Grp., Ltd.,* 2004 U.S. Dist. LEXIS 15323, 21 (S.D.N.Y. 2004) (Scheindlin, J.), quoting *Hsin Ten Enter. USA, Inc. v. Clark Enters.* 149 F. Supp. 2d 60, 63 (S.D.N.Y. 2001) (Scheindlin, J.), quoting *Avia Grp. Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1563 (Fed. Cir. 1988).  If the product features can be designed differently without affecting the operability of the product, those features are not functional.  *Etna Prods*., 2004 U.S. Dist LEXIS at 22-23.

Thus, a design is functional when it must look that way to work.  If an element of a product can have another appearance and still work, then it is ***not*** functional.  It is "ornamental".  The same holds true for an overall design.  If the overall design can have another appearance and still work, it is not functional, it is ornamental.  An element of a design, or an overall design, is functional only if it ***must*** look one way in order to work.

Accordingly, "a design is not dictated solely by its function when alternate designs for the article of manufacture are available."  *Best Lock Corp. v. ILCO Ubican Corp.,* 94 F.3d 1563 1566 (Fed. Cir. 1996).  When there are alternate designs, it shows that the design does not have to look only one particular way in order for it to work.[1]  Alternative designs demonstrate the many options that competitors have.  It shows that they can make a product's design or an individual feature's design that works, but looks different.

An example of a design that is dictated by function will also help to clarify the difference between designs that are dictated by function and those that are not.  The portion of a key that enters a lock, known as the key blade, is a dictated design.  Its appearance is dictated by the internal mechanism within the lock.  If one were to change the key blade's appearance in any way, the blade would no longer function to open the lock.  All key blades that can open that lock must look the same.  There can be no alternate designs for that key blade.

On the other hand, the finger-held portion of the same key is ornamental.  It may have many different appearances, but can still be held by the fingers of one's hand.

---

[1]   It is expected that Defendant will argue using language from Berry Sterling that "other appropriate considerations might include: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." *Berry Sterling*, 122 F.3d at 1456.  However, as noted by the Court these are all considerations that the Court ***might*** consider.  They do not change the ultimate standard, which is whether a design is dictated by its function.

In summary, something has design functionality in only a very limited set of circumstances – namely, **when it _must_ look that way to work**.  If it could look different, the design is deemed non-functional.

## II.   CLAIM CONSTRUCTION OF DESIGN PATENTS

"It is a bedrock principle of patent law that the claims of the patent define the invention". *Phillips v. A.H Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotations and cite omitted).[2]  The claims of a design patent are best represented by the drawings.  *Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665, 678 (Fed. Cir. 2008).

### A.   Broken Lines are Not Included in the Scope of the Claims

For design patents, the patentee need not claim an entire article of manufacture.  *See, In re Zahn*, 617 F.2d 261, 268-69 (C.C.P. A. 1980).  A patentee may use dotted or broken lines in a design patent to delineate unclaimed features on the drawings that are to be excluded from the scope of design patent claims.[3]  In fact, the '465 and the '439 patents both clearly state on their cover page that the broken lines do not form part of the claimed design.  *See,* Exhibits 1 and 2.

---

[2] *Merrill v. Yeomans,* 94 U.S. 568, 570 (1876) (the claim is "of primary importance, in the effort to ascertain precisely what it is that is patented."); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339 (1961) ("the claims made in the patent are the sole measure of the grant"); *White v. Dunbar,* 119 U.S. 47, 52 (1886); *Cont'l Paper Bag Co. v. E. Paper Bag Co.,* 210 U.S. 405, 419 (1908) ("the claims measure the invention")

[3] *See e.g., Contessa Food Prods., Inc. v. Conagra,* 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design . . ."); *Door-Master Corp. v. Yorktown, Inc*., 256 F.3d 1308, 1313 (Fed. Cir. 2001) (finding that where a patent stated "the broken lines . . . are for illustrative purposes only and form no part of the claimed design" excluded those features from the claimed design); Manual of Patent Examining Procedure ("MPEP") §1503.02 (2011); *see also Apple,* 2011 U.S. Dist. LEXIS 139049, at *33-34; *Sofpool, LLC v. Intex Recreation Corp*., Case No. 2:07-cv-097, 2007 U.S. Dist. LEXIS 93057, at *6 (E.D. Tex. Dec. 19, 2007*); Dexas Int'l, Ltd. v. Tung Yung Int'l, Inc.*, Civil Action No. 6:07-cv-334, 2008 U.S. Dist. LEXIS 48324, at *9 (E.D. Tex. Jun. 24, 2008).

Thus, based on the well-established case law and the express language of the patentee in the patents at issue, the features of the claimed designs that are shown in broken lines should be excluded from the scope of the claims of the '465 and '439 patents.  They do not form part of the invention of the design patents.

In short, features in dotted lines are not part of the patented design, as they are excluded from the claim as a matter of law.  Accordingly, Defendant Regent should not be permitted to include unpatented features in its analysis of functionality of the claimed designs.

**III.     DESIGN PATENT VALIDITY**

Previously, the Court reserved decision on whether the present trial would also concern issues of validity.  For completeness, Plaintiffs note that in assessing validity, an assessment is made as to whether a design is primarily functional or primarily ornamental.  *See e.g., L.A. Gear*, 988 F.2d at 1123.  In this assessment, the claimed design is viewed in its entirety. *Id.*  The ultimate question is not the functional or decorative aspect of overall appearance of the article is considered in determining whether the claimed design is dictated by the utilitarian purpose of the article.

**PROCEDURAL ISSUES**

**I.     IN VIEW OF THE NUMEROUS ISSUES IMPLICATED, PLAINTIFFS SHOULD PROCEED FIRST IN THE ORDER OF PROOF AS IS TRADITIONAL**

In a meet and confer held yesterday, April 17, 2012, Defendant indicated that it would be requesting that the Court allow it to proceed first at trial on the grounds that it has the burden of proof.  Plaintiffs oppose Defendant's request.

In its Order dated February 7, 2012, the Court indicated that the parties would be proceeding with a "separate trial under Fed. R. Civ. P. 42(b) to determine which if any aspects of

the product designs claimed in plaintiffs' patents in suit are functional". Dkt. 21. This is a matter of the alleged functionality of individual elements of the claimed designs.

As was repeatedly discussed between the parties and the Court, this is to be conducted as a matter of claim construction. Although Plaintiffs have not been able to find any law directly on point with respect to design patents, as far as they have been able to ascertain, generally neither party has the burden of proof on claim construction. *See e.g., Level One Communs. v. Seeq Tech.*, 987 F. Supp. 1191, 1196 (N.D. Cal. 1997) (discussing claim construction in the utility context).

Moreover, in the normal course of proceedings, it is traditionally the patentee who goes first. The patentee brought the lawsuit. It has the right to start off by explaining why it did so, and what the suit is about. It has the right to explain what its patents cover, and to begin by affirmatively telling its story. Defendant wants to confusingly bury the introduction and context to the entire suit in the middle of proceedings, rather than at the beginning of the proceedings where introduction and context belongs. It would bury the beginning in the middle, both for witness testimony and opening statements. That would be highly unfair, and also would be confusing and disjointed.

Furthermore, the findings in this claim construction phase will directly affect Plaintiff's subsequent infringement case against Regent. Claim construction is the first step in determining infringement.[4] In the design patent context, claim construction of functional elements is conducted to determine what elements are parsed out during the infringement analysis. Moreover, infringement is Plaintiffs' burden of proof. *See e.g., Egyptian Goddess,* 543 F.3d 665,

---

[4] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 38 USPQ2d 1461 (1996) (A determination of whether a product infringes a given patent involves two steps, namely, claim construction of the scope of the patent, followed by a comparison of the construed claim to the accused product).

678-679 (the patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence).

The findings on this phase will also subsequently potentially affect trade dress functionality. This is because some (but not all) of the features in the design patent overlap with features of Plaintiffs' trade dress in this case. Trade dress non-functionality is Plaintiffs' burden of proof. *See*, 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional"); *Cartier v. Sardell*, 294 Fed. Appx. 615, 620 (2nd Cir. 2008).

The findings on this phase will also potentially affect Defendant's position regarding alleged design patent invalidity. Design patent invalidity is Defendant's burden of proof. *See e.g., L.A. Gear*, 988 F.2d at 1123.

Thus, in summary, this trial set under Rule 42(b) by the Court is for analysis of the aspects of Plaintiffs' patented product designs. This is part of claim construction, which is neither party's burden of proof, weighing against disturbing the normal order of proceedings. The findings in claim construction will then be incorporated in at least three separate subsequent phases of the case; namely, infringement, trade dress non-functionality, and design patent invalidity. Two of those, infringement and trade dress non-functionality, are Plaintiffs' burden of proof, weighing for allowing Plaintiffs to proceed first and weighing against disturbing against the normal order of proceedings. It would be unfair for Plaintiff to have to both bear the burden of proof on infringement and trade dress functionality, and to proceed last.

Only one factor out of four, design patent invalidity, is Defendant's burden of proof. This is respectfully not sufficient to alter the normal order of proceedings.

Moreover, to the extent that the findings in this trial regarding particular elements affect design patent invalidity, those findings on elements have essentially the same impact on trade dress non-functionality, which, as noted above, is Plaintiffs' burden of proof.  Thus, overall, the effect of this trial, and the relevant burdens, require that Plaintiff proceed first with its case. Indeed, Defendants in other cases will very likely attempt to use any findings here in any further proceedings, where Plaintiff bears the burden, making it unfair and prejudicial for Plaintiff to both bear the bulk of the burdens (here and in the other cases), but denied their right to proceed first with their case.

As a result, it is submitted that the traditional order of proceedings should be preserved.

## EVIDENTIARY ISSUES

I.  **DEFENDANT REGENT SHOULD NOT BE ALLOWED TO CONFUSE THE JURY BY IMPROPERLY IMPORTING LIMITATIONS FROM PLAINTIFFS' COMMERCIAL EMBODIMENT INTO THE DESIGN PATENT CLAIMS**

Plaintiffs seek to preclude Regent from confusing the jury by improperly importing evidence from LNC's commercial embodiment of its no-spill cup designs into the claims of the '465 and '439 patents.   Such importation is not permitted under well-established law, and severely runs the risk of confusing the jury.

As noted above, a design patent is limited to the scope of its claims, as set forth in the drawings.  *Egyptian Goddess,* 43 F.3d at 678.  The design patent only covers what is shown in drawings, irrespective of what the Plaintiff sells.  Accordingly, it is improper to import into or rely on unclaimed features, such as Plaintiff's commercial embodiment of its no-spill cup product as components of claims of a design patent.  *See Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995); *Berry*, 122 F.3d at 1455; *see also*

*Orthoarm, Inc. v. Forestadent USA, Inc*., 682 F. Supp 2d 978, 981 (E.D. Mo. 2008);   *Paradigm Sales, Inc. v. Weber Marking Sys., Inc*. 880 F. Supp. 1247, 1252 (N.D. Ind. 1995); *Parker-Hannifin Corp. v. Wix Filtration Corp*., Case No. 1:07-cv-1374, Case No. 1:07-cv-1375, 2011 U.S. Dist. LEXIS 33578, at *37 (N.D. Ohio March 17, 2011).

Courts "cannot use limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent."   *Berry*, 122 F.3d at 1455. Such importation of unclaimed features from the commercial embodiment, such as the cup's valve and silicon material, for example, should be barred from being improperly considered in a determination of the '465 and '439 patent claims' functionality, as such elements are not present in the claims of the two patents.   Improper importation into the design patent claims and consideration of these features in a functionality determination, as Regent seeks, is an attempt to confuse the jury, when these elements from the commercial embodiment are unclaimed subject matter, and not part of the patent claims. *Sun Hill,* 48 F.3d at 1196 (the court must look to the claims, ***not*** the commercial embodiment.).

As is the case here, the commercial embodiment contains many features beyond those in the patent claims, such as the valves and silicone material.  Regent seeks to use evidence of the features of LNC's commercial embodiment as if they were part of the claims of the design patents – which they are not.  *See e.g.,* Joint Pretrial Order, Defendant's Proposed Findings of Fact 1 (discussion of air vent/valve, which is not claimed in the patent), and 8 (discussion of the use of silicone material, which is also not claimed).  To do so would improperly add unclaimed elements to the scope of the design patents, confusing the jury in its functionality determination.

By asking the Court to allow the jury to consider unclaimed elements from the commercial embodiment in its functionality determination, Defendant Regent is seeking to

rewrite the scope of the design patent that was actually issued by the Patent Office.  This use of the commercial embodiment creates too great a potential for jury confusion with respect to the actual claimed limitations of the '465 and '439 patents. *See e.g., Paradigm*, 880 F. Supp. at 1252; *Orthoarm*, 682 F. Supp. 2d 981.

## II.   DEFENDANT REGENT SHOULD BE PRECLUDED FROM IMPORTING UNCLAIMED LIMITATIONS FROM OTHER UTILITY PATENTS INTO THE DESIGN PATENT CLAIMS

Plaintiffs also seek to preclude Regent from confusing the jury by improperly importing limitations from the specification and claims of other patents, namely LNC's utility patent, U.S. Patent No. 6,994,225 ("the '225 patent") into the claims of the '465 and '439 design patents.

Numerous courts, including the Federal Circuit, have long-cautioned against reading claim limitations from the patent specification of a patent in suit, or from any other patents by the same inventor to related subject matter.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005); *see also King Pharmaceuticals, Inc. v. Sandoz, Inc.*, Civil Action No. 09-3587, 2010 U.S. DIst. LEXIS 105061, at *9 (D.N.J. Oct. 1, 2010); *Novartis Pharmaceuticals Corp. v. Apotex Corp.,* 02 Civ. 8917, at *14-15 (KMW) (HBP) (S.D.N.Y. Mar. 13, 2006); *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 440 F. Supp.2d 120 (D. Conn. 2006). Although the specification of a utility patent often describes specific embodiments of an invention, the Federal Circuit has specifically warned against confining the patent's claims to those embodiments.  *Phillips,* 415 F.3d at 1323; *see also Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than illustrated in the specific embodiments in the specification").  The Federal Circuit has expressly rejected the notion that if a patent describes only a single embodiment, the claims of that patent must be construed as being limited to that embodiment.  *Phillips,* 415 F.3d at 1323.

In the expert report of Regent's functionality and design expert, Jim Holley, Regent attempts to incorporate limitations from the specification of LNC's '225 utility patent into claims of the two design patents at issue in this case.  *See* Expert Report of Jim Holley, attached at Exhibit B hereto at pages 9-13.  Such incorporation of limitations from the specification of a patent – let alone an entirely separate utility patent – is improper under the law for the reasons stated above.

Accordingly, Plaintiffs seek to preclude regent from improperly offering evidence of the abstract and specification of the '225 utility patent for the purpose of limiting the scope of the claims of patents in suit, thereby confusing the jury in its functionality determination as to the proper scope of these design patents.

## III.   DEFENDANT REGENT SHOULD BE PRECLUDED FROM CONFUSING THE JURY WITH THE IMPROPER STANDARD FOR DESIGN PATENT FUNCTIONALITY

As discussed above in Section II.B, *supra*, the standard for functionality of a design patent is that the overall appearance of the design must be "dictated by function" or "driven purely by utility" for the patent to be invalid as functional.  *Richardson,* 579 F.3d at 1294; *L.A. Gear, Inc.*, 988 F.2d at 1123.

Based on the history of this case thus far, it is expected that Regent will try to confuse the jury by trying to use the English language term "function" instead of the legal standards of functionality which are quite different.  Contrary to Defendant's repeated usage, the law states that it is not enough for an article to merely have some utilitarian or functional purpose; rather, its purpose must be "dictated by function."

As such, it is respectfully requested that this Court expressly caution Regent against attempts to confuse the jury with the wrong standard or definition of functionality, or by conflating the English language term "function" with the legal definition of functionality.

## IV.   DEFENDANT REGENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING THE '620 PATENT

Based on Regent's exhibit list, it is also expected that it Regent will attempt to introduce prior judicial decisions at trial regarding a Luv n' care utility patent on a no-spill cup valve, U.S. Patent No. 6,357,620 ("the '620 patent"), which was declared invalid seven years ago. That patent, however, is not in suit. Also, it is totally unrelated to the patents-in-suit. It is a utility patent directed to a valve which is not part of the design patents-in-suit, nor of Luv n' care's asserted products, nor of Regent's accused products.

Moreover, the grounds for invalidity in that prior action was based on assertions of alleged prior art to that utility patent. It had nothing to do with design patent functionality.

For Regent to introduce information regarding the '620 patent suit at trial would taint the jurors' minds using a suit irrelevant to any of the issues here. Regent would attempt to prejudice the jury into believing that the present design patent is invalid because an unrelated utility patent was held invalid seven years ago. A discussion of the unrelated prior patent and suit have no relevance and would be highly prejudicial, so Regent's attempt should not be permitted.

Judicial findings in other cases proffered as evidence constitute inadmissible hearsay under FRE 801, 802 and 803, and are more prejudicial than probative under FRE 403. *See Blue Cross and Blue Shield of New Jersey,* 141 F.Supp.2d 320, 323 (upholding trial court's exclusion of factual findings and credibility assessments made by a court in a prior action on grounds of inadmissible hearsay under FRE 801 and undue prejudice under FRE 403); *Nipper v. Snipes,* 7

F.3d 415, 417 (4th Cir. 1992) (new trial warranted where trial court improperly admitted in evidence portions of court order from a different case involving some of the same parties as "judicial findings are not public records within the meaning of FRE 803(8)(C)"); *Matsushita Ele. Indus. Co.,* 505 F.Supp. 11125, 1185, *rev'd on other grounds,* (E.D. Pa. 1980) ("[A] review of the advisory committee note [to FRE 803] makes it clear that judicial findings are not encompassed; not only is there not the remotest reference to judicial findings, but there is a specific reference on the findings of officials and agencies within the executive branch); *United States Football League v. Nat'l Football League,* 842 F.2d 1335, 1375 (2d Cir. 1988) (upholding trial court's exclusion of cross-examination of expert regarding testimony given in two prior cases under FRE 403 as this evidence would have resulted in a "confusing and certainly complex digression into two earlier trials").

Accordingly, none of the statements made by the Court in that case should be admissible here. Excluding statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence. *See Blue Cross and Blue Shield of New Jersey,* 141 F.Supp.2d 320, 323, *citing,* Margaret A. Berger, et. al. *Evidence*, 803.28[6](2001). In addition, "the influence of a trial judge on a jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, (1933); *United States v. Fernandez,* 480 F.2d 726 (1973) (trial judge's impression that he considered defense expert's testimony unreliable warranted a new trial).

Accordingly, Regent should be precluded from introducing any such evidence regarding prior litigation over the '620 patent, including the invalidity findings therein, and any other findings in that prior litigation.

**V.    DEFENDANT REGENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING THE INVALIDITY OF OTHER THIRD PARTY PATENTS**

Based on the pre-trial proceedings, it is expected that Regent will also try to introduce evidence regarding the invalidity of other third party patents from proceedings that Regent and its witnesses have no direct knowledge of.  It is requested that Regent be precluded from doing so as well.  Specifically, Regent is expected to attempt to introduce evidence regarding

As noted above, judicial findings in other cases proffered as evidence constitute inadmissible hearsay under FRE 801, 802 and 803, and are more prejudicial than probative under FRE 403.  Regent's and its witnesses have no direct knowledge regarding those third party patents or the evidence in those third party cases.  Accordingly, any evidence relating thereto should be precluded.

**VI.   REGENT SHOULD NOT BE ALLOWED TO INTRODUCE IRRELEVANT PREJUDICIAL INFORMATION REGARDING UNRELATED PRODUCT RECALLS, FDA WARNINGS, AND A SEVENTEEN YEAR OLD MISDEMEANOR GUILTY PLEA**

Pursuant to Federal Rules of Evidence ("FRE"), 401, 402, 403, 404 and 609, Plaintiffs respectfully seek an Order precluding Regent from submitting any evidence at trial in this matter (whether documentary or testimony) concerning any Luv n' care product recalls, warnings from the Federal Drug Administration ("FDA"), and Luv n' care's misdemeanor guilty plea to Consumer Product Safety Commission ("CPSC") statutory violations from 1995 regarding Luv n' care pacifier and teether products.  None of these are at issue in this law suit.[5]

More specifically, Luv n' care seeks to preclude from evidence at trial the following of Regent's trial exhibits:

---

[5] As the Court, of course, knows, the mini-trial concerns Luv n' care's patent rights in drinking cups; not pacifiers and teethers.

| Regent's Exhibit No. | Description | Bates Number |
|---|---|---|
| DTX 172 | FDA Warning Letter | REG 003498-03500 |
| DTX 173 | News from CPSC Pacifier Recall | REG 003501-2 |
| DTX 174 | News from CPSC:  Luv n' care Pleads Guilty to CPSC Statutory Violations | REG 003503 |

This evidence should be precluded from admission at trial because it would unfairly prejudice the jury against Luv n' care, confuse issues, and waste time on irrelevant matters.

"Evidence which is not relevant is not admissible."  FRE 402.  Here, to obfuscate issues at trial and cast aspersions on Luv n' care, Regent apparently seeks to introduce into evidence unrelated product recalls and FDA warning letters, and press releases for a Luv n' care misdemeanor guilty plea from 1995.

Generally, as is the case here, product recalls and regulatory action are inadmissible when the product at issue was not subject to the recall.[6]  Even where a recall concerned the product at issue, it is inadmissible if the issue giving rise to the recall is irrelevant to issues in the case. [7]

---

[6]  *See Uitts v. General Motors Corp.,* 411 F.Supp. 1380, 1383 (E.D. Pa 1974), *aff'd* 513 F.2d 626 (3d Cir. 1975) (excluding evidence of recall of non-identical product); *Lewy v. Remington Arms Co., Inc.,* 836 F.2d 1104, 1109 (8th Cir. 1988) (recall inadmissible where the product at issue was a different model than product recalled); *Bizzle v. McKesson Corp.,* 961 F.2d 719, 721 (8th Cir. 1992) (recall inadmissible where the product at issue was not recalled).

[7] *See, e.g.*, *Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars Inc.,* 915 F.2d 641, 649 (11th Cir. 1990) (recall relevant only if the alleged defect was the same defect involved in the recall);  *Kane v. Ford Motor Co.,* 450 F.2d 315, 316 (3d Cir. 1971) (recall irrelevant where plaintiff failed to establish that defect precipitating the recall existed on the product at issue); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 49 (Okla. 1976) ("If the defect mentioned in the recall letter is not the defect claimed to have caused the accident then the letter is irrelevant and inadmissible"); *Jordan v. General Motors Corp.,* 624 F.Supp. 72, 77 (E.D. La 1985) (recall evidence irrelevant where it dealt with a different model year and  the defect was  different from the defect alleged for the product at issue); *see also, Verzwyvelt v. St. Paul Fire & Marine Ins. Co.,* 175 F.Supp.2d 881, 888-89 (W.D. La 2001) (recall evidence should be excluded even where the alleged defect is the same if it occurred in a different product); *Harris v. General Motors Corp.,* 2007 WL 622226 (N.J. Superior Court, Appellate Division, March 2, 2007) (for evidence of other incidents to be admissible at trial, the party offering such evidence must establish by clear and convincing evidence that the other incidents "took place under the same or substantially the same conditions as the accident in question").

In fact, in contrast to the case at bar, the products liability cases cited in the footnotes below involved recall evidence that was in the same genre as the underlying claim. Here, the product recalls, FDA warning letters, and Luv n' care's 17 year-old misdemeanor guilty plea are even more tenuous because they have no conceivable relationship to the functionality of drinking cups.

The evidence is also prejudicial under FRE 403 as it "involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer,* 50 F.3d 1133, 1139 (2d Cir. 1995). The court will exclude such evidence if it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Highland,* 551 F.Supp.2d 173 at 176-177, citing FRE 403 advisory committee notes.

Likewise, the evidence is unfairly prejudicial under FRE 404 and more prejudicial than probative under FRE 403.   If introduced at trial, this evidence would cause jury confusion and unfair prejudice to Luv n' care by wrongly insinuating that Luv n' care is a company that sells unsafe children's products to the public.  Because of the potential for such evidence to inflame the jury, Luv n' care would be forced to defend itself against and explain each and every recall, and each and every FDA warning letter that has nothing to do with the relevant issues to this litigation.  Luv n' care would also be forced to explain the circumstances surrounding a misdemeanor guilty plea from 17 years ago.  This would lead to the litigation of collateral and irrelevant issues and result in the parties "trying another lawsuit within the existing lawsuit." *Harpring v. Continental Oil Co.,* 628 F.2d 406, 410 (5th Cir. 1980).[8]  The evidence at issue has

---

[8] *See also Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 836 (Tex. Ct. App. 1988), writ of error denied, (1989) (affirming exclusion of evidence about a different model because if

no probative value to any issue in this matter; and, if introduced at trial, will cause severe prejudice to Luv n' care.

Luv n' care's guilty plea to CPSC statutory violations is also inadmissible under FRE 609 because the guilty plea was for misdemeanor violations that took place *seventeen (17)* years ago. [9] Furthermore, knowledge and willfulness were <u>not</u> elements of the misdemeanor offenses charged.

Regent's obvious attempt to cloud the issues in this case and poison the jurors' minds should fail.  Accordingly, as the admission of this irrelevant evidence at trial would cause substantial prejudice and injustice to Luv n' care at trial, its introduction should be precluded

## CONCLUSION

For the reasons discussed in fuller detail above, LNC respectfully submits this trial brief on contested legal and evidentiary issues in this case.

Dated: April; 18, 2012                                    Respectfully submitted,

                                                         */s/ Morris E. Cohen*
                                                         _____
                                                         Morris E. Cohen (MC-4620)
                                                         Lee A. Goldberg (LG-9423)
                                                         Sasha B. Coffiner (SC-4362)
                                                         Benjamin Graf (BG-1409)
                                                         GOLDBERG COHEN LLP
                                                         1350 Avenue of the Americas, 4th Floor
                                                         New York, New York 10019

---

plaintiff had been permitted to inflate the trial with such evidence the defendant  would necessarily have had to respond with cross-examination and additional rebuttal proof).
[9] *See Olin Corp. v. Certain Underwriters at Lloyd's London,* 468 F.2d 120 (2d Cir. 2006) (in insurance coverage dispute regarding pollution liability, defendant barred from admitting into evidence corporate plaintiff's conviction for knowingly polluting the environment and knowingly submitting false reports to the government to cover up the misconduct because the conviction was more than 10 years old and its probative value did not outweigh its prejudicial impact); *see also Robinson v. Clemons,* 1998 WL 151285 (D. Del. 1998), citing advisory committee notes to FRE 609(b) (convictions over 10 years old "should be admitted in exceptional cases and only rarely").

(646) 380-2087 (phone)
(646) 514-2123 (fax)
MCohen@goldbergcohen.com
LGoldberg@goldbergcohen.com
SCoffiner@goldbergcohen.com
BGraf@goldbergcohen.com

Attorneys for LUV N' CARE, LTD. and
ADMAR INTERNATIONAL, INC.