UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

LUV N' CARE, LTD. and ADMAR
INTERNATIONAL, INC.,

                    Plaintiffs,                              **OPINION AND ORDER**

          - against -                                        10 Civ. 9492

REGENT BABY PRODUCTS CORP.
d/b/a/ BABY KING,

                    Defendant.

------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

**I.    INTRODUCTION**

          Luv n' Care, Ltd. and Admar International, Inc. (collectively, "LNC")

bring this infringement action against Regent Baby Products Corp. d/b/a Baby

King ("Regent").  In April, a jury trial was held before Judge Louis Stanton. The

jury determined that two of LNC's design patents, D617,465 ("the '465 patent")

and D634,439 ("the '439 patent"), were not primarily dictated by function.[1]

Regent now moves this Court for judgment as a matter of law on the patents'

_____

          [1]     *See* 4/26/12 10 Civ. 9492 Verdict Sheet ("Verdict Sheet"), Ex. E to
5/24/12 Declaration of David T. Yaegashi, defendant's counsel ("Yaegashi Decl."),
at 1.

functionality, or in the alternative, a new trial.  For the reasons set forth below,

Regent's motion is denied.

## II.     BACKGROUND

LNC designs and sells baby products internationally.[2]  Regent is a

nationwide distributor of baby products.[3]  This action concerns two of LNC's

design patents, the '465 and '439 patents.[4]  The '465 patent discloses the entirety

of a child's drinking cup[5] and includes five drawing sheets.[6]  The '439 patent

discloses a cup top[7] and includes six drawing sheets.[8]  The two patents are in the

same patent family.[9]  Regent argues that the '465 and '439 patents are invalid

because they are purely functional.[10]

---

[2]     *See* Complaint ¶ 8.

[3]     *See id.* ¶ 7.

[4]     *See* Plaintiffs' Memorandum of Law in Opposition to Motion for Judgment as a Matter of Law or a New Trial ("Pl. Mem."), at 4 n.1.

[5]     *See* 7/29/11 Letter from Regent to Judge Stanton, Ex. A to Yaegashi Decl., at 2.

[6]     *See id.* at 4.

[7]     *See id.* at 2.

[8]     *See id.* at 4.

[9]     *See id.* at 2.

[10]     *See* Defendant's Memorandum of Law in Support of Judgment as a Matter of Law or a New Trial ("Def. Mem."), at 1.

The verdict form presented the jury with one question for each design patent — is the appearance of the design claimed in the patent "primarily dictated by its function?"[11]  Regent argues that this question involved claim construction — a matter for the court, not the jury — and requests that I engage in claim construction at this time.[12]  Regent further argues that the verdict was not supported by the evidence and that Regent was unfairly prejudiced by LNC's comments during the trial.[13]  LNC argues that the jury verdict was supported by sufficient evidence,[14] and that Regent waived its argument that the jury was impermissibly tasked with claim construction by failing to either object to the jury instructions or preserve the issue in its Rule 50(a) motion.[15]

## IV.   LEGAL STANDARD

### A.   Motion for Judgment as a Matter of Law Under Rule 50 and Motion for a New Trial Under Rule 59

A court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable

---

[11]     Verdict Sheet, at 1.

[12]     *See* Def. Mem. at 1–2.

[13]     *See id.* at 2, 20.

[14]     *See* Pl. Mem. at 9–19.

[15]     *See id.* at 4–6.

jury would not have a legally sufficient evidentiary basis to find for the party on

that issue."[16]  The standard for granting judgment as a matter of law "mirrors" the

standard for granting summary judgment.[17]  Accordingly, in ruling on such a

motion, the trial court is required to

> consider the evidence in the light most favorable to the party
> against whom the motion was made and to give that party the
> benefit of all reasonable inferences that the jury might have drawn
> in his favor from the evidence.  The court cannot assess the weight
> of conflicting evidence, pass on the credibility of the witnesses, or
> substitute its judgment for that of the jury.[18]

A jury verdict should not be set aside lightly.  A court may not grant judgment as a

matter of law unless:  (1) there is such a "'complete absence of evidence

supporting the verdict that the jury's findings could only have been the result of

sheer surmise and conjecture'" or (2) there is "'such an overwhelming amount of

evidence in favor of the movant that reasonable and fair minded [persons] could

---

[16]  Fed. R. Civ. P. 50(a)(1).

[17]  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quotation marks and citations omitted); *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007).

[18]  *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).  *Accord Caceres v. Port Authority of N.Y. and N.J.*, 631 F.3d 620, 622 (2d Cir. 2011).

not arrive at a verdict against [it].'"[19]

A "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[20]  The legal test for granting a new trial is less stringent than for granting judgment as a matter of law.  "Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."[21]  Nevertheless, in practice, courts do not grant new trials as freely as the language suggests.  "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"[22]

Under Federal Rule of Civil Procedure 50(b),

[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed judgment as a matter of law and may include

---

[19]     *Altria Grp., Inc. v. U.S.*, 658 F.3d 276, 290 (2d Cir. 2011) (quoting *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 79 (2d Cir. 2006)).

[20]     Fed. R. Civ. P. 59(a)(1)(A).

[21]     *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000) (quotation marks and citation omitted).

[22]     *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 51 (2d Cir. 2012) (quoting *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 106 (2d Cir. 2002)).

an alternative or joint request for a new trial under Rule 59 . . . [—i]n ruling on the renewed motion, the court may:  (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law.

## V.    APPLICABLE LAW

### A.    Functionality

"'A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent.'"[23]  "An aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"[24]  "The design of a useful article is deemed to be functional when 'the appearance of the claimed design is 'dictated by' the use or purpose of the article.'"[25]  "Whether a patented design is functional or ornamental is a question of fact."[26]  The Federal Circuit has held that "'[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed

---

[23]    *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1370 (Fed. Cir. 2006) (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)).

[24]    *Id.* at 1371 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982)).

[25]    *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)).

[26]    *Id.* at 1365.

6

in order to identify the non-functional aspects of the design as shown in the patent.'"[27]  "[T]he preferable course ordinarily will be for a district court not to attempt to construe a design patent claim"; however, "the distinction between the functional and ornamental aspects of a design" is an issue on which "a court's guidance would be useful to the fact finder."[28]

       "In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article."[29]  "If the patented design is primarily functional rather than ornamental, the patent is invalid."[30]  "'The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.'"[31]

---

[27]    *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

[28]    *Id.* (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008)).

[29]    *L.A. Gear*, 988 F.2d at 1123 (citing *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988)).

[30]    *Richardson*, 597 F.3d at 1293–94 (citing *Lee*, 838 F.2d at 1188).

[31]    *Id.* at 1294 (quoting *L.A. Gear*, 988 F.2d at 1123).

7

When determining functionality in the context of a design patent, the

court may consider

> "whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function."[32]

## VI.    DISCUSSION

### A.    The Jury Verdict Was Not Clearly Erroneous and Was Supported by Sufficient Evidence

I will not address Regent's claim construction arguments because they

are premature.  Claim construction can occur at any point before an infringement

determination, and it may take into account a jury's findings of fact.[33]  The jury did

_____

[32]    *PHG Techs.*, 469 F.3d at 1366 (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)).

[33]    *See Depaoli v. Daisy Mfg. Co.*, No. 07ocv–11778–DPW, 2009 WL 2145721, at *5 (D. Mass. July 14, 2009) ("To the extent the scope of the claim must be limited by prosecution history or functionality, I will address those issues definitively if and when they are raised at some later stage in these proceedings, such as resolution of motions for summary judgment or as part of the jury instructions at trial.").  *See also Colgate-Palmolive Co. v. Ranir, L.L.C.*, No. 06–417, 2007 WL 2225888, at *3 (D. Del. July 31, 2007) ("Cognizant of the court's role as the construer of patent claims and the need for claim construction to be complete before a jury deliberates on infringement, the court may further limit the current construction at trial by factual determinations regarding functionality and ornamentality of the included features."); *ADC Telecomm., Inc. v. Panduit Corp.*, 200 F. Supp. 2d 1022, 1033 (D. Minn. 2002) (finding that because fact issues permeated the parties' arguments concerning functionality, functionality was

8

not construe the claim, nor does its finding preclude claim construction at a later date.[34]  Thus, there is one issue before the Court: whether the jury verdict on functionality was clearly erroneous because it was not sufficiently supported by the evidence.

The parties presented the following evidence regarding functionality at trial.

### 1.    The '225 Utility Patent

Regent proffered LNC's 6,994,225 ("the '225 patent") as a utility patent that discloses the utilitarian advantages of the design.[35]  Indeed this factor weighs against LNC, as the '225 patent describes the functionality of individual elements.  However, the functionality inquiry asks whether the *overall* design is

---

best left to the fact-finder).

[34]    Judge Stanton concluded that, while a jury may not construe the claims, it may make an overall determination of invalidity due to functionality. *See* Def. Mem. at 4.  *See Luv N' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010) (discussing the potential for a jury trial on the issue of functionality); *Dexas Int'l, Ltd. v. Office Max Inc.*, No. 6:07cv396, 2009 WL 252164, at *7 n.4 (E.D. Tex. Jan. 30, 2009) (adopting a brief verbal claim construction to "appropriately guide the jury['s]" infringement determination, yet "express[ing] no opinion as to whether the patented design incorporates functional elements").

[35]    *See* Def. Mem. at 10.

9

dictated by utility.[36]

## 2.    Advertising

Regent offered various examples of LNC advertising that touts the functional qualities of individual elements of LNC cups.[37]  These advertisements highlight individual attributes such as the silicone spout — for example, one advertisement states that the spout is "designed to prevent drips and spills."[38]  Yet, these advertisements do not demonstrate that the overall design is dictated by function.  Even where individual elements are dictated by function, the overall design may still be ornamental.[39]

---

[36]    *See L.A. Gear*, 988 F.2d at 1123 ("[T]he utility of each of the various elements that comprise the design is not the relevant inquiry with respect to a design patent.  In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article.") (citing *Lee*, 838 F.2d at 1189).

[37]    *See* LNC bottle advertisements ("LNC ads"), Exs. I, J, K, L to Yaegashi Decl.

[38]    *See* LNC ads, Ex. J to Yaegashi Decl., at 1.

[39]    *See Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 240 (Fed. Cir. 1986) ("In determining whether a design is primarily functional, the purposes of the particular elements of the design necessarily must be considered.").  However, "'[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance.'" *PHG Techs.*, 469 F.3d at 1366 (quoting *Berry Sterling*, 122 F.3d at 1455).  Regent also cites case law holding that the functionality inquiry

### 3.    Alternative Designs

LNC put forth many examples of alternative designs that were

available to Regent.[40]  Regent argues that LNC's alternative designs were legally

insufficient because they could not be manufactured without additional cost or loss

of quality.[41]  LNC correctly argues that their alternatives — differently-shaped

cups that performed the same function as effectively as the LNC design — were

appropriate.[42]  The jury was entitled to weigh the alternative designs more heavily

---

concerns the overall design — not the individual elements.  *See Rip-It Holdings,
LLC v. Wilson Hunt Int'l, Ltd.*, No. 6:11–cv–1733–Orl–28GJK, 2012 WL 113529,
at *4 (M.D. Fla. Jan. 13, 2012) ("The mere fact that each element of a design
serves some functional purpose does not necessarily mean that the overall design is
dictated by function.") (citing *L.A. Gear*, 988 F.2d at 1123).  "[B]ut when the
function of each element cannot be separated from the overall design, it indicates
that the entire design is dictated by function."  *Id.* (citing *PHG Techs.*, 469 F.3d at
1368).

[40]    *See* Pl. Mem. at 12.

[41]    *See* Def. Mem. at 15.  *PHG Techs.*, 469 F.3d at 1367 (finding that a
"full inquiry with respect to alleged alternative designs includes a determination as
to whether the alleged 'alternative designs would adversely affect the utility of the
specified article'" — not the cost or quality of the article) (quoting *Rosco, Inc. v.
Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002)).  *Cf. Valu Eng'g, Inc. v.
Rexnord Corp.*, 278 F.3d 1268, 1276 n.5 (Fed. Cir. 2002) (finding, in the
*trademark* context, that a feature may be functional if it affects the cost or quality
of the article).

[42]    *See* Plaintiffs' Alternative Designs, Ex. 4 to 6/11/12 Declaration of
Benjamin H. Graf, plaintiffs' counsel ("Graf. Decl."), at 1–15.  *See also Rosco*, 304
F.3d at 1378 ("'[T]he design must not be governed solely by function, i.e., . . . this
is not the only possible form of the article that could perform its function.'")

11

than the other facts,[43] and credit the alternative design testimony of Nouri E.

Hakim, the inventor of the LNC designs — testimony which was corroborated by

Regent's witness, Jim Holley, to the extent that Holley testified that one of the cups

was an alternative design.[44]

### 4.    Best Design

Regent restates its utility patent evidence to satisfy this factor.[45]

Plaintiffs' expert, Cooper Woodring testified that the embodiments of the patents-

in-suit were constantly being improved.[46]  Hakim testified that a later design

---

(quoting *Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir.
1999)).  "'When there are several ways to achieve the function of an article of
manufacture, the design of the article is more likely to serve a primarily ornamental
purpose.'"  *Id.* (quoting *L.A. Gear*, 988 F.2d at 1123).

[43]     *See PHG Techs.*, 469 F.3d at 1367 ("'[T]he presence of alternative
designs may or may not assist in determining whether the challenged design can
overcome a functionality challenge. Consideration of alternative designs, if
present, is a useful tool that may allow a court to conclude that a challenged design
is not invalid for functionality.'") (quoting *Berry Sterling*, 122 F.3d at 1455).

[44]     *See* Holley Cross, Ex. 14 to Graf. Decl., at 420.  *See also R.F.M.A.S.,
Inc. v. Mimi So*, 619 F. Supp. 2d 39, 81 n.21 (S.D.N.Y. 2009) ("'[F]unctionality is
a question of fact. The record contains competing expert opinions on the issue of
functionality, either of which the jury could credit.'") (quoting *Keystone Mfg. Co.,
Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 562 (W.D.N.Y. 2005)).

[45]     *See* Def. Mem. at 16.

[46]     *See* Cooper Direct, Ex. 11 to Graf. Decl., at 270.

embodiment was manufactured more cheaply, with no loss of function.[47]

### 5.   Individual Elements or Overall Design Not Dictated by Functionality

Hakim testified that he designed the cup to be attractive.[48]  Most significantly, he also testified that he had designed the cup prior to designing the valve that went inside it.[49]  Regent rebuts this evidence by arguing that the time gap between the filing of the '225 patent and the design patents indicates that the '225 patent dictated the design.[50]

Given the evidence that was offered by LNC to demonstrate that its design patent was not primarily dictated by function, I cannot conclude that there was either insufficient evidence to support the verdict or overwhelming evidence in favor of Regent.  Thus, I cannot conclude that the verdict was clearly erroneous.[51]

---

[47]   *See* Hakim Direct, Ex. 14 to Graf. Decl., at 435.

[48]   *See* Hakim Redirect, Ex. 10 to Graf. Decl., at 240.

[49]   *See* Hakim Direct, Ex. 8 to Graf Decl., at 57.

[50]   *See* Def. Mem. at 18.

[51]   *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 634 F. Supp. 2d 1293, 1304 (M.D. Fla. 2008) ("Because of the presumption of validity, a patentee responding to a challenge to the patent's validity need only submit sufficient evidence to rebut any proof of invalidity offered by the challenger, and, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue.") (citing *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)).  The patents-in-suit were recently reexamined by the Patent Office,

**B.      Prejudice Does Not Warrant Judgement as a Matter of Law or a New Trial**

Regent argues that it was prejudiced by LNC's statements of the law and LNC's false accusation of discovery violations.  LNC argues that because Regent did not object to LNC's statements, they have waived their right to challenge the verdict on that basis.  I find that Regent did not waive its objections,[52] but the cited statements amount — at most — to harmless error.[53] Any potentially harmful effect of statements made by LNC regarding the

---

which found the functionality arguments of two different defendants, Toys R' Us and Munchkin, without merit, although the examiner primarily focused on obviousness.  *See* 7/25/12 Plaintiffs' letter to the Court at 2; 7/26/12 Defendant's Letter to the Court at 1.

[52]      *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 152 (2d Cir. 2010) (finding that a failure to properly object during trial subjects the trial court's actions to a plain error standard).

[53]      *See Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 127 (2d Cir. 2005) (finding that disparaging comments about a party, his witnesses, and the case did not amount to prejudicial conduct, as "'[n]ot every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted.'") (quoting *Matthews v. CTI Container Transp. Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir. 1989)).  *See also Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) ("[B]ecause attorneys are given 'wide latitude in formulating their arguments' to the jury, '[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.'") (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)).

applicable law was negated by Judge Stanton's instructions.[54]  An accusation of

discovery violations, which indeed may have occurred,[55] is also insufficient to

require a new trial or judgment as a matter of law.[56]

## V.    CONCLUSION

Based on the foregoing, Regent's motion is denied.  The Clerk of the

Court is directed to close this motion (Docket No. 65).  A conference is scheduled

for August 23, 2012, at 4:30 p.m. in Courtroom 15C.

---

[54]    *See AIG Global Secs. Lending Corp. v. Banc of Am. Secs., LLC*,
386 Fed. App'x 5, 8 (2d Cir. 2010) (finding that counsel's potentially invalid legal
theories did not warrant a new trial for the adversary, particularly when, "in any
event," the judge instructs the jury on the law).  *See also Frometa v. Diaz-Diaz*,
348 Fed. App'x 621 (2d Cir. 2009) (finding misstatements of the law and improper
comments insufficient to trigger a new trial when there was sufficient evidence to
support the jury's verdict).

[55]    LNC provided evidence that Regent withheld the physical
embodiment of one of its cited designs.  *See* Pl. Mem. at 24.

[56]    *See Air China, Ltd. v. Kopf*, Nos. 10–3289–cv(L), 10–3571–cv(XAP),
10–3577–cv(XAP), 10–3730–cv(XAP), 10–4128–cv(XAP), 10–4166–cv(XAP),
10–4226–cv(XAP), 2012 WL 1109372, *4 (2d Cir. Apr. 4, 2012) ("'[E]xtreme[ly]
inflammatory remarks' by counsel during the closing to the jury, such as '[T]his
man is a disgrace . . . ,' a 'schmuck,' a 'scam artist' and 'con man' who had a
'fundamental dishonesty'" did not demand a new trial because they were isolated
comments in an otherwise appropriate closing).  *See also Marcic*, 397 F.3d at 126
("[A]lmost all of the statements [defendant] relies on were statements suggesting
that [defendant] or his witnesses lied or that their testimony was unbelievable.
Such statements were not statements of the evidence at all, but were rather
argument calling on the jury to draw inferences from the evidence.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 31, 2012

**-Appearances-**

**For Plaintiffs:**

Lee A. Goldberg, Esq.
Morris E. Cohen, Esq.
Goldberg Cohen, LLP
1350 Avenue of the Americas, Suite 425
New York, New York 10019
(646) 380-2087

**For Defendant:**

James J. Foster, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 573-7825

John T. Johnson, Esq.
Fish & Richardson P.C.
153 East 53rd Street
New York, New York 10022-4611
(212) 765-5070

David Tadahiko Yaegashi, Esq.
John Stephen Goetz, Esq.
Kristen A. McCallion, Esq.
Fish & Richardson P.C. (NYC)
601 Lexington Ave, 52nd floor
New York, New York 10022
(212) 765-5070
(212) 641-2277/ 2261