**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/13

------------------------------------------------ X

LUV N' CARE, LTD. and ADMAR
INTERNATIONAL, INC.,

           **Plaintiffs,**

       **- against -**

REGENT BABY PRODUCTS CORP.
d/b/a/ BABY KING,

           **Defendant.**

------------------------------------------------ X

**OPINION AND ORDER**

**10 Civ. 9492**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Luv n' Care, Ltd. and Admar International, Inc. (collectively, "LNC")
bring this infringement action against Regent Baby Products Corp. d/b/a Baby
King ("Regent"). LNC sells sippy cups and other products for children in the
United States and internationally under the NUBY brand name, or through private
labels including Precious Moments and Parent's Choice.[1] Admar International,

---

[1] *See* Regent Baby Products' Revised Statement of Undisputed Material
Facts Pursuant to Local Civil Rules 56.1 ("Def. 56.1") ¶¶ 187-189.

1

Inc. owns the  interest in LNC's trademarks and trade dress.[2]  Regent is also a baby

products company and sells its products under the Baby King brand name, or

through private labels including Fisher Price and Sesame Beginnings.[3]

      LNC alleges that Regent has infringed its no-spill drinking cup design

patent and corresponding trade dress.[4]  LNC also alleges unfair competition and

tortious interference with prospective business relations under New York state law.

Regent now moves for partial summary judgment on LNC's trade dress

infringement and tortious interference claims. For the reasons set forth below,

Regent's motion for partial summary judgment is granted.

## II.    BACKGROUND

      Regent's motion for summary judgment on trade dress infringement is

---

[2]    *See* Second Amended Complaint ("SAC") ¶ 19.

[3]    *See* Def. 56.1 ¶¶  2 and 6.

[4]    LNC originally alleged infringement of fourteen different products, including various no-spill drinking cups, pacifiers, pacifier holders, teething keys, and a food storage container.  LNC voluntarily withdrew its claims as to nine of those products on October 23, 2013.  *See* 10/23/13 Stipulation of Partial Dismissal With Prejudice and 10/23/13 Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion For Summary Judgment ("Pl. Opp."), at 1, n.1.  LNC now brings infringement claims as to five products – 1) the "Gripper Cup" silicone spout cap and cup combination, 2) the "Gripper Cup" silicone spout cap alone, 3) the "Flip-It" flip-top cap, 4) the "Hard Spout" cap and cup combination, and 5) the "Grip n'Sip" cap and twin-handle cup combination.  *See* SAC ¶¶ 49-77 and Pl. Opp. at 1.

limited to LNC's claims as to the flip-top cap and the hard spout cup and cap combination.[5] "LNC has been selling its hard top design for approximately fifteen years, and its flip-top design for . . . over fourteen years."[6] Since that time, "LNC has sold more than $21 million of its flip-top products . . . in the United States, and more than $58 million of its hard top products in the United States."[7] LNC claims that numerous products manufactured by Regent and sold under both its brand name and private labels infringe upon its protected trade dress.[8]

LNC also alleges that Regent's sale of allegedly infringing no-spill cups has tortiously interfered with its prospective business relations.[9] Primarily, LNC claims that Regent has "acted to induce [LNC's] customers including, but not limited to, Dollar General Corporation, to purchase the [infringing] no-spill cups . . . . instead of [LNC's] authorized, legitimate no-spill cups . . . with the sole purpose of harming [LNC]" or by using "dishonest, unfair or improper means to cause

---

[5]    *See* 10/29/13 Regent Baby Products' Revised Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Def. Mem."), at 2.

[6]    10/23/13 Declaration of Nouri E. Hakim, Chief Executive Officer of LNC, ¶ 10.

[7]    *Id*. ¶ 12.

[8]    *See* SAC ¶¶ 62-72.

[9]    *See id*. ¶¶ 149-156.

harm and injury to [LNC]."[10]

## III.   LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[11]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law."[13]  "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

---

[10]   *Id*. ¶¶ 152-153.

[11]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[12]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[13]   *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

to the trier of fact on an essential element of the non[-]movant's claim."[14]  The burden then "shifts to the non[-]moving party to present specific evidence showing a genuine dispute."[15]  This requires "'more than simply show[ing] that there is some metaphysical doubt as to the material facts,'"[16] and the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation."[17]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[18]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[19]

---

[14]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[15]     *Id.*

[16]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[17]     *Id.*

[18]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[19]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## IV.   APPLICABLE LAW

### A.   Trade Dress Infringement Under the Lanham Act

The Lanham Act provides:

> (1)   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[20]

A plaintiff asserting a trademark infringement claim must show *first* that its trade dress or trademark is a protectable interest under the Lanham Act, and *second* that there is a likelihood of confusion.[21]  If a plaintiff offers no evidence of a protectable interest, a court need not consider likelihood of confusion.[22]

---

[20]      15 U.S.C. § 1125(a).

[21]      *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).

[22]      *See Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) ("If, however, secondary meaning cannot be established, [the product claiming protection] will be ineligible for protection, and our analysis will conclude without having to address the likelihood of confusion. Absent secondary

Moreover, a Lanham Act claimant must describe its protectable interest with some clarity — it must offer "'a precise expression of the character and scope of the claimed trade dress.'"[23]

In order to succeed on a claim of trade dress infringement under Section 43(a) of the Lanham Act, a plaintiff must demonstrate:  (1) that its claimed mark is either inherently distinctive or has acquired distinctiveness through secondary meaning; (2) that there is a likelihood of confusion between its trade dress and the defendant's; and (3) that the trade dress is non-functional.[24]  Inherent distinctiveness is evaluated as follows:

> [T]rade dress is classified on a spectrum of increasing distinctiveness as generic, descriptive, suggestive, or arbitrary/fanciful.  Suggestive and arbitrary or fanciful trade dress are deemed inherently distinctive and thus always satisfy the first prong of the test for protection.  A descriptive trade dress may be found inherently distinctive if the plaintiff establishes that its mark has acquired secondary meaning giving it distinctiveness to the consumer.  A generic trade dress receives no Lanham Act

---

meaning, purchasers will not associate [the product] with a particular source of origin. By definition, there could not be likelihood of confusion as to source.").

[23]    *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 117 (2d Cir. 2001) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

[24]    *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769-70 (1992); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997).

protection.[25]

To determine whether a trade dress has acquired distinctiveness through secondary meaning, a court should consider six factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."[26] "[A]n idea, a concept or a generalized type of appearance" is "generic" and not protected, even if the proponent can prove secondary meaning.[27] "[T]rade dress . . . composed entirely of commonly used or functional elements . . . should be regarded as unprotectible or 'generic,' to avoid tying up a product or marketing idea."[28]

The likelihood of confusion inquiry "turns on whether 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's

_____

[25]   *Fun-Damental Too*, 111 F.3d at 999-1000 (citing *Two Pesos*, 505 U.S. at 769-70 and *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985)).

[26]   *Cartier Inc. v. Jewelry, Inc.*, 294 Fed. App'x 615, 617 (2d Cir. 2008).

[27]   *Jeffrey Milstein Inc., v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995).

[28]   *Yurman,* 262 F.3d at 118 (quoting *Milstein*, 58 F.3d at 32).

8

mark.'"[29]  "[A] probability of confusion, not a mere possibility, must be found to exist" in order to support a finding of infringement.[30]  Generally speaking, establishing that probability is the plaintiff's burden,[31] which means that the defendant typically does not need to disprove a likelihood of confusion.[32]  In determining whether there is a likelihood of confusion, an eight-factor balancing test should be applied.[33]   A finding of confusion need not be based on survey evidence; confusion may be shown through statements.

---

[29]      *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477-78 (2d Cir. 1996)).

[30]      *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).

[31]      *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

[32]      *See KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004).

[33]      *See Starbucks Corp. v. Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citing *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  The *Polaroid* factors include: (1) strength of the plaintiff's mark; (2) degree of similarity between plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that either owner will bridge the gap; (5) the sophistication of the buyers; (6) the quality of defendant's product; (7) actual confusion; and (8) the existence of bad faith.  *See id.*  None of these factors is dispositive, and the above list is not exhaustive.  *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998).  Instead, they are intended to act "as a useful guide" in determining if there exists a likelihood of confusion.  *Lois Sportswear*, 799 F.2d at 872.

9

### B.      Tortious Interference Under New York State Law

A tortious interference claim requires a plaintiff to prove that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."[34]

## IV.    DISCUSSION

### A.      Trade Dress Infringement

Regent does not argue that LNC has failed to raise sufficient issues of material fact as to secondary meaning or likelihood of confusion.  Rather, Regent argues that LNC's claimed trade dress is unprotected under the Lanham Act because it is generic.  According to Regent, "cups just like LNC's have been sold for decades by other baby products companies" and its claims to trade dress rights "cannot be taken seriously" in light of the many other similar products available on the market.[35]  Regent argues that even if LNC were to raise sufficient issues of material fact as to secondary meaning or likelihood of confusion, summary judgment is required in Regent's favor because under Second Circuit law, "'a

---

[34]      *Catskill Dev., LLC v. Park Place Entm't*, 547 F.3d 115, 132 (2d Cir. 2008).

[35]      Def. Mem. at 8.

showing of secondary meaning is insufficient to protect product designs that are overbroad or generic.'"[36]

LNC responds that it does not claim "trade dress rights to the general concept of a hard top cup or a flip-top cup" but rather "it claims rights to specific designs of hard top and flip-top cups as described in [the] Second Amended Complaint."[37] LNC further restates that it has raised sufficient issues of material fact as to secondary meaning and likelihood of confusion to defeat summary judgment.[38]

LNC describes the protected trade dress of its hard spout cup as follows: "a custom-colored translucent, generally cylindrical shaped cup having a slightly wider upper portion" with a "colored or tinted inner dome cap portion sit[ting] on an outer ring cap portion . . . on the body of the cup; the inner dome cap portion having a spout with a bulb-like base and a relatively pointed top."[39] Regent provides exhaustive evidence of numerous hard spout cups that have been widely available on the market for over two decades, through submission of third

---

[36]   *Id*. at 10 (quoting *Yurman,* 262 F.3d at 117).

[37]   Pl. Opp. at 4.

[38]   *See id.* at 3-11.

[39]   SAC ¶¶ 71-72

11

party catalogs and websites of online retailers.[40]   Some of the hard spout cups

matching LNC's trade dress description were sold by other manufacturers as early

as 1993 and 1994 – several years before LNC's first hard-spout cup became

available for sale in 1998.[41]

LNC describes the protected trade dress of its flip-top cap as follows:

"the combination and arrangement of a flip-top 'football helmet' shaped cap, and a

---

[40]      *See* 9/16/13 Declaration of Roy Pomerantz, Chief Executive Officer
and General Counsel of Regent Baby Products ("9/16/13 Pomerantz Decl."), ¶¶
110-121; 11/8/13 Declaration of Pomerantz ("11/18/13 Pomerantz Decl."), ¶ 2.
*See also* Def. 56.1 ¶¶ 168-185.  LNC objects to the admission of this evidence on
the ground that Regent provided no authentication for the cited catalogs and
websites and that the images are "inadmissible hearsay." Plaintiffs' Response to
Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule
56.1, ¶¶ 168-185. The "appearance, contents, substance, internal patterns, or other
distinctive characteristics" of Regent's proffered third party catalogs and webpages
are sufficient to authenticate them.  Federal Rule of Evidence ("Rule") 901(b)(4).
The catalogs and web pages show hard spout cups matching LNC's trade dress
description listed for sale by third party manufacturers and retailers.  This evidence
is not hearsay because it is not offered for the truth of any assertion contained
therein.  Rather, the catalogs and web pages are offered to show that these cups
have been, and continue to be, commonly sold and available.  *See Giggle, Inc. v.
netFocal, Inc.*, 856 F. Supp. 2d 625, 633 (S.D.N.Y. 2012) ("[E]vidence of the
advertisements and websites, *which are themselves not hearsay*, . . . shows that  . . .
third parties have been actively using the GIGGLE mark in commerce to sell
children's toys, market children's goods and services to the consuming public, and
operate businesses in the children's goods and services industry.") (emphasis
added).  Because Regent's evidence has been properly authenticated and is not
hearsay, it is admissible and properly considered on this summary judgment
motion.

[41]      *See* 9/16/13 Pomerantz Decl. ¶¶ 114-115.

ring shaped base, when the cap is considered individually and when attached to a cup."[42]   Regent submits numerous examples of other flip-top cups that include a "football helmet-shaped" cap "with a "ring shaped base."[43]   Regent argues that these designs are "common, non-distinctive, unquestionably conform[] to industry standards, and [are] thus generic and unprotectable."[44]

     "It is axiomatic that generic product designs are not entitled to trade dress protection under the Lanham Act."[45] "A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected."[46] "The level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that that dress is no more than a concept or idea to be applied to particular products."[47] "[W]here it is the custom in a particular

---

[42]    SAC ¶ 66.

[43]    *See* 9/16/13 Pomerantz Decl. ¶¶ 133-135 and 11/18/13 Pomerantz Decl. ¶ 4.  *See also* Def. 56.1 ¶¶ 193-203.  LNC's objections as to authentication and hearsay regarding this evidence are the same as those addressed above.

[44]    11/8/13 Defendant Regent Baby's Reply Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Def. Rep."), at 13.

[45]    *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003).

[46]    *Fun-Damental Too*, 111 F.3d at 1000.

[47]    *Milstein*, 58 F.3d at 33.

industry to package products in a similar manner, a trade dress done in that style is likely to be generic."[48]

Courts in the Second Circuit have thus held that a black rectangular-shaped compact design is generic, because these qualities are "common characteristics of the entire genre of makeup compacts,"[49] that the "Swedish Fish" candy design is generic because "animal-shaped gummy candy is common in the candy industry,"[50] and that the "use of gold stars, blue sky and clouds in the labeling and advertising of" a doll is generic because it is "merely suggestive of the broader idea of [an] angelic . . . character."[51]  Other federal circuit courts have adopted the Second Circuit's precedent on generic trade dress.[52]

There is no genuine issue of material fact as to whether these designs

---

[48]   *Mana Prods. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063, 1069-71 (2d Cir. 1995).

[49]   *Id.* at 1070.

[50]   *Malaco Leaf*, 287 F. Supp. 2d at 364.

[51]   *Kaufman & Fisher Wish Co. Ltd., v. FAO Schwarz*, 184 F. Supp. 2d 311, 322 (S.D.N.Y. 2001).

[52]   *See, e.g.*, *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002) (finding generic product configurations unprotectable despite secondary meaning evidence because "no designer should have a monopoly on designs regarded by the public as the basic form of a particular item"); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000) ("Trade dress should be considered generic if well-known or common . . . or a common basic shape or design").

are generic.  LNC's trade dress descriptions refer to common shapes frequently used in the sippy cup industry – a "generally cylindrical cup with a slightly wider upper portion" and a cap with a "bulb-like base and a slightly pointed top" or a "football-helmet shaped cap" with a "ring shaped base"  – that even when configured together would simply be too broad and too general to warrant trade dress protection.  Much like the Swedish Fish design is common among candy manufacturers and a black compact is common in the cosmetics industry, these general shapes and configurations are ubiquitous in the sippy cup market and do not warrant Lanham Act protection.  "[G]ranting trade dress protection to an ordinary product design would create a monopoly in the goods themselves."[53]

LNC does not substantively contest Regent's evidence that the design is common in the market.  Rather, LNC argues that the design was intended to "provid[e] the consumer with a unique and distinctive look" and that "it is these unique designs that consumers have grown and learned to associate with LNC."[54] These assertions do not raise a genuine issue of material fact as to whether or not the product configurations are generic and commonplace.  LNC's argument that its hard spout and flip-top designs have developed a secondary meaning is irrelevant

---

[53]     *Landscape Forms*, 111 F.3d at 380.

[54]     Pl. Opp. at 4-5.

for generic trade dress.  Second Circuit law is clear that "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic"[55] and that "[g]eneric trade dress is never entitled to protection."[56]

Because LNC has failed to define a protectable interest under the Lanham Act, I need not consider likelihood of confusion or the functionality of the trade dresses' features.[57]  Accordingly, LNC's Lanham Act claims as to its hard spout cup and flip-top cap product configurations are dismissed.

### B.    Tortious Interference

Regent does not deny that it sold its products to Dollar General. However, Regent argues that the mere sale of these products is insufficient to prove that it intentionally interfered with LNC's business relationship.[58]  Regent also argues that LNC has failed to present evidence of injury, which is one of the required elements of the tortious interference tort.  According to Regent, "the only

---

[55]    *Yurman*, 262 F.3d at 118.

[56]    *Kaufman*, 184 F. Supp. 2d at 321 (citing *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 743 (2d Cir. 1998)).

[57]    *Medism Ltd. v. Best Med LLC*, 910 F. Supp. 2d 591, 615 (S.D.N.Y. 2012).

[58]    *See* Def. Rep. at 13-14 ("Regent's mere sale of its own products – the only action LNC takes issue with – and nothing more, does not constitute intentional interference.").

relationship allegedly injured was with Dollar General, which remains a current LNC customer."[59]  LNC responds that even though Dollar General "remains a customer of LNC to a certain degree, [Regent's] sales have interfered with LNC's ability to sell as many of its original products . . . as it otherwise could have."[60]

"Under New York law, the [intentional interference element] has been interpreted as requiring direct interference with a third party, that is, 'the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiffs.'"[61]  LNC has failed to provide evidence that Regent targeted Dollar General specifically as an LNC customer and directed any activity towards Dollar General to specifically convince Dollar General to end or limit its relationship with LNC.[62]  Regent merely sold its products to a retailer.  Even if some of those products are ultimately found to have

---

[59]    Def. Mem. at 11.  *Accord* Def. 56.1 ¶ 209.

[60]    Pl. Opp. at 15.  LNC also asserts for the first time in its opposition that Regent sold allegedly infringing products to Wal-Mart.  However, Regent states that it "never sold the remaining items in this case to Wal-Mart."  11/8/13 Pomerantz Decl. ¶ 5.

[61]    *Bekhor v. Josephthal Grp., Inc.* No. 96 Civ. 4156, 2000 WL 1521198, at *8 (S.D.N.Y. Oct. 13, 2000) (quoting *Black Radio Network, Inc. v. Nynex Corp.*, No. 96 Civ. 4138, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000)).

[62]    Regent notes that LNC has never pled nor argued that Regent was aware of LNC's relationship with Dollar General.  *See* Def. Rep. at 13, n. 61.

17

infringed upon LNC's patents or trade dress, the mere sale of those products without the intention to interfere with LNC's business relationship is not a tort.

Furthermore, LNC fails to provide evidence as to injury. The mere assertion that LNC has potentially lost out on sales, unsupported by facts, is conclusory and insufficient to defeat a motion for summary judgment.[63] Accordingly, LNC's claim based for tortious interference with prospective business relations is dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Regent's motion for partial summary judgment is granted. The Clerk of the Court is directed to close this motion (Docket No. 89). A conference is scheduled for January 6, 2014, at 4:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 11, 2013

---

[63]    *See BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) ("The party opposing the motion for summary judgment must set forth concrete particulars.  It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.") (quotations and other marks omitted)).

18

**-Appearances-**

**For Plaintiffs:**

Lee A. Goldberg, Esq.
Morris E. Cohen, Esq.
Goldberg Cohen, LLP
1350 Avenue of the Americas, Suite 425
New York, New York 10019
(646) 380-2087

**For Defendant:**

James J. Foster, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 573-7825

John T. Johnson, Esq.
David Tadahiko Yaegashi, Esq.
John Stephen Goetz, Esq.
Kristen A. McCallion, Esq.
Fish & Richardson P.C.
601 Lexington Ave, 52nd floor
New York, New York 10022
(212) 765-5070